## EDWARD DENNY *vs.* CONWAY STOCK AND MUTUAL FIRE INSURANCE COMPANY.

A policy of insurance was declared upon its face to be "made and accepted in reference to the survey on file at this office;" and was afterwards renewed "upon condition that the application, upon which said policy was originally predicated, shall continue valid and in full force." The policy had been issued upon an application for insurance headed with the name of another insurance company, and signed by the president of that company, who delivered the application to this company, and procured the original policy and the renewal of it; but there was no other evidence that the application was made with the authority or knowledge of the assured. *Held,* that the assured was not bound by the statements in the application, as to the precautions to be taken against fire; nor by representations made by such president, at the time of procuring the renewal, as to the amount of other insurance.

The breach of a warranty on the face of a policy of insurance, not alleged in the answer, nor relied upon at the trial, cannot be taken advantage of at the argument before the full court upon the report of the presiding judge.

ACTION OF CONTRACT upon a policy of insurance, numbered 1262, for $5,000 upon the plaintiff's woollen mill in Barre, and the machinery and stock therein. Upon the face of the policy, immediately after the description of the property and the proportion of insurance upon each kind, were these words: " $25,000 insured on same elsewhere in like proportions."

In the body of the policy it was "agreed and declared that this policy is made and accepted in reference to the survey on file at this office, and the conditions hereto annexed, which are to be used and resorted to in order to explain the rights and obligations of the parties hereto in all cases not herein otherwise specially provided for."

The fourth of said conditions provides as follows: " Applications for insurance must specify the construction and materials of the buildings to be insured, or containing the property to be insured; by whom occupied; whether as a private dwelling, or how otherwise; its situation with respect to contiguous buildings, and their construction and materials; whether any manufactory is carried on within or about it; and, in case of goods or merchandise, whether or not they are of the description denominated hazardous or extrahazardous, or included in the memorandum of special rates. And a false description by the

insured, of a building, or of its contents, or omitting to make known any fact or feature in the risk which increases the hazard of the same, or, in a valued policy, an overvaluation of the same, shall render absolutely void a policy issuing upon such description or valuation. And if any survey, plan or description of the property herein insured, is referred to in this policy, such survey, plan or description shall be deemed and taken to be a warranty on the part of the assured."

The original policy was for one year from the 1st of January 1855, and was renewed yearly " upon condition that the application upon which said policy was originally predicated shall continue valid and in full force." The fire occurred in February 1858.

Answer, that the policy " was made upon the representations contained in the application, a copy whereof is hereto annexed, and the renewal of said policy was made upon the said representations and also upon the representations contained in the letter, a copy of which is hereto annexed ; that these representations were made by the plaintiff and by his agent; and that said representations were not true in this, to wit, that there were no ladders such as is described in said application, nor any other ladder affixed to said building equivalent to that described as aforesaid, and there was no watch kept in said building such as is described in said application, and thereby the said risk was greatly increased ; and they say there was no other insurance on said property, whereby the defendants were deceived and misled in respect to said risk."

The application annexed to the answer was in the usual form of an application for insurance, headed " Manufacturers' Mutual Fire Insurance Company. The application of ———— ————— for insurance ; " containing, among other written answers to printed interrogatories, these : " There is one stationary ladder from the ground to the roof, and another soon to be erected." " A watch is kept constantly in the building." and signed only thus : " I certify that the above is a correct survey of the mill as made by myself. Henry A. Denny, Prest. Wor. Manufacturers' Mutual Ins. Co."

The letter annexed to the answer was from said Denny, dated "Office of the Mechanics' Mutual Fire Insurance Company, Worcester, 24th December 1855," and addressed to the defend-ants' secretary, saying: "Do you wish to renew policy No. 1262 on the woollen mill of E. Denny of Barre at same rate? I have recently examined the premises. We shall renew our policy at same rate. Whole amount of insurance $30,000."

At the trial before *Metcalf*, J., the defendants offered evidence that Henry A. Denny applied to their secretary for the original insurance, and that they received from said Denny the applica-tion annexed to their answer, before the policy was made, and that the policy was predicated upon it; that the latter annexed to their answer was written by Henry A. Denny, on the 24th of December 1855, and put on the files of the company with the survey, and the subsequent renewals were predicated upon the application and this letter; and that all the renewals were ob-tained by the plaintiff through Henry A. Denny. But the defendants offered no evidence of any authority to him to act as the plaintiff's agent, except such as might be inferred from his acts and his own statements to them.

They also offered evidence that there never was but one sta-tionary ladder in the building, (though there were other means of putting out fire, which the plaintiff contended were equiva-lent,) and that for three or four months before the fire the mill had not been in operation evenings or Saturdays, and no watch-man had been on the premises while it was not in operation; and that the other insurance on the property, at the date of the policy, was only $12,000, (including $5,000 in the Mechanics' Mutual Fire Insurance Company, which expired on the 8th of May 1856,) $15,000 from the 1st of July 1856, and less and less afterwards until the 1st of January 1858, since which time there had been none but the policy in suit.

The defendants "contended that the policy was forfeited, 1st. By the neglect of the plaintiff to provide two stationary or per-manent ladders; 2d. By his neglect to keep a watchman con-stantly in the mill; 3d. By the misrepresentations in regard to insurance in other offices, especially in regard to the insurance

in the Mechanics' Mutual Fire Insurance Company, and the foregoing proof that there was no such insurance."

The judge ruled that the evidence offered would constitute no defence to the action; the jury rendered a verdict for the plaintiff, and the case was reserved for the consideration of the full court.

*F. Chamberlin,* for the defendants.   1. The survey was made part of the contract of insurance by express reference to it in the policy and certificates of renewal.   It is therefore immaterial whether Henry A. Denny had authority to make the representations or not, or whether he furnished the survey.   *Sheldon* v. *Hartford Fire Ins. Co.* 22 Conn. 235.   *Liberty Hall Association* v. *Housatonic Mutual Fire Ins. Co.* 7 Gray, 261.   *Barrett* v. *Union Mutual Fire Ins. Co.* 7 Cush. 175.   *Kibbe* v. *Hamilton Mutual Ins. Co.* 11 Gray,    .  *Wilbur* v. *Bowditch Mutual Fire Ins. Co.* 10 Cush. 446.   The omission for three years to erect a second stationary ladder was therefore a breach of the contract and fatal. *Gloucester Manuf. Co.* v. *Howard Fire Ins. Co.* 5 Gray, 497. *Bowditch Mutual Fire Ins. Co.* v. *Winslow,* 3 Gray, 415. · *Houghton* v. *Manufacturers' Mutual Fire Ins. Co.* 8 Met. 114.   *Murdock* v. *Chenango County Mutual Ins. Co.* 2 Comst. 210.   1 Phil. Ins. § 542.   So was the failure to keep a constant watch.   *Crocker* v. *People's Mutual Fire Ins. Co.* 8 Cush. 79.   *Glendale Woollen Co.* v. *Protection Ins. Co.* 21 Conn. 19.

2. The substance of Henry A. Denny's representation as to other insurance was as follows: " Other intelligent insurers have expressed their judgment in favor of insuring this property to the amount of $30,000 at this rate; among others, the company of which I am president will renew their insurance at this rate." It was an affirmation of the good credit of the building among insurers.   When he made it, he knew it was insured for only $25,000 in all.   When he received the certificate of renewal, seven days later, he knew it was insured for only $20,000 in all, and that his company had not renewed.   At the time of the fire the plaintiff could not get insurance elsewhere; and had the defendants known the truth, they would not have insured.   An action lies against an insurance company for a false representa-

tion inducing the plaintiff to insure. *Pontifex* v. *Bignold,* 3 Man. & Gr. 63. And see *Wontner* v. *Shairp,* 4 C. B. 404.

· 3. The words on the face of the policy, " $25,000 insured on same elsewhere," constituted a warranty that that amount was then insured on the property — which, being false, avoided the policy. See *Forbush* v. *Western Massachusetts Ins. Co.* 4 Gray, 343.

*F. H. Dewey,* for the plaintiff.

BIGELOW, J. The defendants, at the trial of this case, rested their defence solely on these two grounds, 1st. That the plaintiff had failed to comply with certain executory representations and stipulations, concerning the construction and mode of use of the property insured, during the period of time covered by the policy; and 2d. That he had misstated the amount of insurance existing on the buildings at the time of making application to the defendants to insure them.

1. In support of the first ground of defence, and in order to prove the stipulations and representations which it was alleged the plaintiff had violated, the defendants offered in evidence a paper containing a description of the property insured, in the form of questions and answers, as usually made in applications for insurance. But this paper did not on its face purport to have been made by the plaintiff or in his behalf, nor was it signed by him. It was a description of the property by a third person; nor was there any evidence that its contents were assented to or even known by the plaintiff.

The defendants, however, sought to hold him responsible for the statements and stipulations contained in it, by reason of a clause in the policy to the effect that the contract of insurance was made and accepted in reference to a " survey " on file in the office of the defendants, which was to be resorted to in order to explain the rights and obligations of the parties under the contract. The argument was, and it is now again urged, that the plaintiff, having accepted a policy which referred to a survey, is shown to have had constructive notice of the existence of such survey; that he is bound by the stipulations and representations contained in it, and in seeking to enforce the contract is

estopped to deny that they were made by him or by his authority.

Admitting the soundness and force of this argument, and that the plaintiff is bound by the survey so far as he has recognized and adopted it by accepting the policy, the question still remains to be determined, to what extent such recognition and adoption go. And the answer to this question depends on the proper and legitimate meaning of the word " survey ; " because it was of this, and this only, that the plaintiff had notice by the terms of his policy. Upon this point, we think there can be no doubt. In its strict signification, as well as in the broader meaning which it may be supposed to have as applied to the subject matter, it can be taken to import only a plan and description of the present existing state, condition and mode of use of the property. It cannot, by any reasonable construction, be held to signify that any statements or representations of a promissory or executory nature were embraced within it, relating to any contemplated alteration or improvement in the property, or to the mode in which the premises were to be occupied during the continuance of the policy. In this sense, the word appears to be used in the conditions of insurance attached to the policy and forming a part of the contract. The terms " survey, plan and description " are there used as being nearly synonymous.

Such being the true import of the word " survey," we can have no difficulty in ascertaining the extent to which the plaintiff is bound by the representations and stipulations contained in the paper which the defendants offered in evidence at the trial. So far as they are of an executory nature, or relate to the use or occupation of the premises subsequently to the date of the policy, it is clear that the plaintiff is not bound by them. He has neither recognized nor adopted them, nor is he estopped from showing that they are not obligatory upon him. The defendants therefore cannot sustain their first ground of defence by proof that no watchman was constantly kept in the mill, or that ladders were not erected on the buildings. Those were stipulations by which he was not bound.

The condition in the certificates of renewal, " that the applica-

42 *

tion upon which said policy was originally predicated shall continue valid and in full force," cannot enlarge the effect of the original reference in the policy.

2. As to the second ground of defence, based on the alleged misrepresentation concerning the amount of insurance ón the property when the policy was issued, it is sufficient to say that there was no evidence at the trial, that any representations on the subject were ever made or authorized by the plaintiff.

3. It was suggested at the argument of the case on the questions raised at the trial and presented by the report of the judge, that the facts in evidence disclosed an additional ground of defence. The policy on its face contains the express stipulation or warranty that twenty five thousand dollars were insured on the property elsewhere; and it appeared at the trial that the amount actually insured was much less than this sum. It is quite probable that this would have been a sufficient answer to the plaintiff's claim, if it had been seasonably insisted on. But we think it is quite too late for the defendants now to avail themselves of it. No such ground of defence was distinctly stated in their answer, nor was it suggested at the trial. They cannot be permitted, in this stage of a cause, to start a new objection to the plaintiff's right to recover, which was within their knowledge at the time of the trial, and of which they did not seek to avail themselves, when the plaintiff had an opportunity to meet it. *Judgment on the verdict.*