## JOHN KISTER v. LEBANON MUTUAL INS. CO.

### ERROR TO THE COURT OF COMMON PLEAS OF YORK COUNTY

Argued May 23, 1889—Decided October 7, 1889.
[To be reported.]

1. A clause in a fire insurance policy providing that "if any broker, or other person than the insured, shall have procured this insurance to be taken by the company, such broker or other person shall be considered the agent of the insured and not of this company," does not include an agent authorized by the company to take the insurance.
2. One who filled up an application, attested it as agent, sent it to the company with a report on the proposed risk signed by himself as agent, received from the company and delivered to the applicant the policy applied for, collected the premium and remitted it to the company in a formal monthly report, deducting commissions, and afterward collected assessments on the policy, giving receipts which the company recognized, must be regarded as the company's agent in the transaction.
(a) By the provisions of an insurance policy the application therefor, taken by an agent of the company and containing the answers of the applicant to certain questions, with a warranty of their truth, was made a part of the policy; and it was provided that if any of the representations made by the assured were false, the policy should be void: certain of the answers contained in the application were untrue.

3. In an action by the insured upon such policy, evidence is admissible to show that at the time the application was written the insured gave to the agent of the company true and correct answers to said questions, but the agent wrote down other answers than those so given to him, and the insured signed the application in ignorance of this fact.

4. That the policy when issued was accompanied by a copy of the application, and the insured by reading it might then have discovered that his answers were not correctly written down, was a consideration to be addressed to the jury; for the company cannot repudiate the fraud of its agent and thus escape from its contract, merely because the insured in good faith accepted the act of the agent without examination.

5. A covenant in a policy (not the warranted application) against future incumbrances is not violated, within its spirit and meaning, by the revival of an existing judgment, or by the entry of an outstanding judgment bond included in the amount of existing incumbrances stated in the application, or even by the entry of a new judgment, if thereby there be no increase in the total amount of the incumbrances.

Before STERRETT, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 450 January Term 1889, Sup. Ct.; court below, No. 13 October Term 1888, C. P.

On September 13, 1888, John Kister brought assumpsit against the Lebanon Mutual Insurance Company of Jonestown, Pa., upon a policy of insurance against fire issued to the plaintiff by the defendant company. The defendant pleaded, non-assumpsit.

At the trial on March 11, 1889, the plaintiff offered in evidence the policy upon which the suit was brought, excluding from the offer a copy of the application which was upon the back of the policy and by a clause contained in the policy was made a part of it.

Objected to because the policy cannot be offered in evidence without the application.

By the court: Offer overruled; exception.[1]

The plaintiff then put in evidence the policy and application. By the policy, which was dated November 5, 1885, the defendant company, in consideration of ten dollars in hand paid, and an obligation to pay such sums at such times as the board of directors might require, for the payment of fire losses and necessary expenses of the company, insured John Kister for the term of five years against loss by fire, to the amount of $1,000,

upon a certain two story building at Goldsboro, York county, Pa., used for a town hall and for business purposes. The following covenants or conditions were contained in the policy:

" And if the assured shall make any false representations as to the character, situation or occupancy of the property, or the interest of the assured in the same; or conceal any fact material to the risk, either in a written application or otherwise; . . . . or if the risk be increased by any means whatever, and the assured shall neglect to notify this company thereof, and have the same indorsed hereon, and make actual cash payment into the office of the company, or to its agent having authority, as aforesaid, to receive the same, of such additional premium as shall be demanded; . . . . or if the assured . . . . shall sell or transfer the property herein insured, or have the same incumbered, without notice to this company, indorsed hereon; . . . . then and in every such case this policy shall be null and void."

" If any broker or other person than the assured, shall have procured this insurance to be taken by the company, such broker or other person shall be considered the agent of the assured and not of this company."

" And it is hereby understood and agreed by and between this company and the assured, that this policy is made and accepted in reference to the foregoing terms and conditions, as well as the application and survey, which are made part of this policy, and which are to be used and resorted to in order to explain the rights and obligations of the parties hereto, in all cases not herein otherwise specially provided for in writing."

To the application was appended the signature of John Kister as applicant, witnessed by R. P. Strominger, agent. It bore date November 4, 1885. Portions of it were as follows:

" The said applicant makes the following statements and gives the following answers to interrogatories here put relative to the risk, as a warranty on the part of the assured, for which a policy numbered the same as this application, is issued: ·

7. Have you ever suffered loss of property by fire? If so, were you insured, and in what company?

7. Yes, small loss. Farmers', of York, Dover, Leb. Mutual, of Jonestown.

9. Is it encumbered? To what amount, if so? Is the encumbrance insured?

9. None.

16. Are all the facts material to the risk made known?

16. Yes.

" And the undersigned, applicant for the proposed-insurance hereby covenants and agrees to accept of the policy issued upon this application and survey, if in accordance therewith. But if any untrue answers be given to the foregoing interrogatories, whereby the said company has been deceived as to the character of the risk, . . . . . then said policy of insurance to be void and of no effect. . . . . And the insured hereby covenants and engages that the representations given in this application for this insurance are a warranty on the part of the assured, and contain a just, full and true exposition of all the facts and circumstances in regard to condition, situation and value of the property insured."

To the application was appended also a statement as to the exposures and occupancy of the building and a report on the desirability of the risk, signed by R. P. Strominger, agent.

The plaintiff then showed that the application had been forwarded by R. P. Strominger to the special agent of the defendant company, and the policy applied for was thereupon sent to Strominger, who delivered it to the plaintiff and collected from him the premium, which Strominger, at the end of the month when he made his report as agent, sent to the special agent, after deducting his commission on the insurance. The plaintiff then showed that on April 26, 1888, the building insured was destroyed by fire, and that on May 9, 1888, proofs of loss were sent to the defendant company, and rested.

The defendant put in evidence a number of judgments which were standing upon the record against John Kister at the date of his application, aggregating in amount over $4,400, some of which were revived between the dates of the application and the fire; also three judgments aggregating $1,500, which were entered against him during the year 1886. C. F. Reehling, sworn for the defendant, testified that the plaintiff had suffered three losses by fire, prior to November 4, 1885, one of them being in a confectionery store carried on by him, another in a house and stable at a place called Smokeville, the witness having no personal knowledge of the third.

The plaintiff having taken the stand in rebuttal, his counsel

offered to prove by him, that at the time R. P. Strominger obtained from him the application already in evidence, the answer that he gave to Strominger to question No. 9 was that he had liens on his property exceeding $4,000, but that he had paid some of them, but he did not know how much, or words to that effect; that he did not state, as in the application, that there were none; that the application was not read to him before he signed it; that he signed it believing that the agent had properly written down his answer: For the purpose of showing that the answer did state the amount correctly as a warranty, the agent having written down an answer entirely different from that given by the assured.

Defendant's counsel: It is objected that the answer given by the plaintiff and subscribed to by him is by the terms of the application and the policy made a warranty, and cannot be contradicted or varied in this way; that the proof shows that the agent who took the application was not the agent of the company, and if he improperly wrote down the answer of the plaintiff, it was the plaintiff's loss, and not the company's: that it is not proper evidence to re-form the written contract, or vary, or change its terms; it is irrelevant, immaterial and improper.

Plaintiff's counsel: The plaintiff will offer to follow the above by proof that the incumbrances on the insured property were not increased but diminished, after the issuing of the policy, even to a sum below the amount stated by the applicant at the time of making the application.

Defendant's counsel: In view of the fact that several judgments were entered against the plaintiff subsequent to the issuing of this policy, it is immaterial as to whether the amount was greater or less, and it is irrelevant and immaterial as to what it is proposed to be followed by.

By the court: Offer refused; exception.[2]

Plaintiff's counsel: The plaintiff now offers to prove by himself the witness on the stand, and also by R. P. Strominger, agent of the company, that at the time of the taking of the application, he, the plaintiff, stated to the agent Strominger, not that there were no incumbrances on the property, but that there were incumbrances exceeding $4,000, and that some of them had been paid, he did not know exactly how much, or words to that effect; that Strominger, the agent of the company, in filling the

blank space after the question No. 9, wrote down the word " none"
incorrectly, mistakenly, or otherwise ; to be followed by evidence
of the demand made by the company on the plaintiff in this case
for the losses under this policy, with the notice of the company
thereon, sent to him, and the receipts; that assessments were
paid to the company, one on October 30, 1886, and the other
September 15, 1887, both of the receipts being signed by the
same R. P. Strominger, as agent of the company ; and that the
said payments were made in pursuance of the directions or in-
structions of the company that the assessments should be paid
to him, as contained in the assessments : all of which is offered
as evidence in rebuttal to sustain the position of the plaintiff,
and going to show that the answer to the question No. 9, in the
application, was not correctly written down by the agent Strom-
inger, and also for the further purpose of showing the agency of
Strominger, and that the company defendant continued to levy
assessments and collect them from the plaintiff.

The defendant waived formal proof of the authenticity of the
notices and receipts mentioned in this offer, but objected to the
admission of the offer.

By the court: Offer refused ; exception.[3]

Plaintiff's counsel: The plaintiff further proposes to prove
that at the time that this application was made, November 5,
1885, the amount due on the incumbrances against the plaintiff
amounted to less than $3,000 and that they never exceeded that
amount between that time and the time of the fire, April 26,
1888 ; and that at no time between the date of the application
and the date of the fire was the amount due on the incumbrances
equal to the amount stated to the agent by the plaintiff at the
time that he took the application ; for the same purpose as stated
before, to rebut the evidence given by the defendant of the in-
cumbrances.

Objected to.

By the court: Offer refused; exception.[4]

Plaintiff's counsel: The plaintiff further proposes to prove
by himself that he told R. P. Strominger in answer to inter-
rogatory No. 7 in the application, that he had had three fires,
one in the tenant house on the farm, and the loss was $500, and
one in Goldsboro, and that the loss was $75, and one on the
confectionery in Goldsboro, and that the amount of the loss

was $800, and that the insurance was in the Dover company, the Jonestown company and the Farmers' of York, to be corroborated by the testimony of R. P. Strominger: for the purpose of rebutting the testimony of the defendant and showing that he made true answers to the agent, but that they were incorrectly taken down by him. We also propose to prove by the plaintiff that he did not read the application before he signed it, nor afterwards, and that he did not read the copy of it on the policy, and had no knowledge of the words and omissions made by the agent in that application, and did not discover it until this affidavit of defence was filed.

Objected to.

By the court: Offer refused; exception.[5]

The testimony being then closed, the court, LATIMER, J., charged the jury as follows :

This is a suit brought by John Kister against the Lebanon Mutual Insurance Company of Jonestown, Pennsylvania, on a policy of insurance issued by the company to the plaintiff, and dated November 5, 1885, under the seal of the company, by which, in consideration of the sum of ten dollars, and the obligation to pay such sum or sums of money, at such times as the board of directors may direct, for the payment of losses by fire and the expenses of the company, the company insured John Kister against loss by fire to the amount of $1,000, on a two story shingle roofed, frame hall building and attachments thereto, which policy was issued by the said company in pursuance of the written application made by the said John Kister to the company, for that amount of insurance on that property, in which there are written answers to certain questions that were put to him. [In the first place, the question was put to him, Is there any incumbrance on the property, and to what amount, if so, is it incumbered? and the answer to that question is, "none;" that is, that there were no incumbrances on the property insured. By the terms of the application the answers to questions were made warranties, the legal result of which is, that if any of those answers were false, the policy was thereby voided, and there could be no recovery on it from the company, in case of loss. Under an act of assembly which was passed in 1881, this company, like all other insurance com-

Charge of Court below.

panies, insisting upon the terms and conditions of the application as warranties, was required to indorse upon the back of the policy of insurance issued to Mr. Kister a copy of the application, and this policy on which this suit is brought contains indorsed on the back of it a copy of the answer to question No. 9, among the other answers included in the application. "Is there any incumbrance on the property, and to what amount, if so, is it incumbered?" The uncontradicted evidence adduced on behalf of the company defendant in this case, shows that at the time of the application for this insurance, there was a considerable amount of incumbrances on the property. The judgments have been offered in evidence, and have been read in your hearing and they show that that particular answer to that particular question, which by the terms of the policy is made a warranty on the part of the insured, that that particular answer was not true. That being the case, and there being no legal evidence to explain how or why that untruthful answer was made, it is my duty to say to you that the defendant has made out a complete legal defence to the claim made in this suit, notwithstanding the fact that there is evidence that during the pendency of this policy the building was destroyed by fire. The company insuring this property had a right to rely upon the truth of the answers contained in the application signed by the insured, and one of those answers having been proved to be untrue, it constitutes a legal defence on behalf of the claim that is made by John Kister, plaintiff in this case, for the amount of the insurance, and your verdict therefore will be for the defendant in this case, with costs of suit.] [7]

The jury returned a verdict, as directed, for the defendant, and judgment was entered thereon; whereupon the plaintiff took this writ, assigning for error:

1–5. The refusal of the plaintiff's offers.[1 to 5]

7. The part of the charge embraced in [ ] [7]

*Mr. E. W. Spangler* (with him *Mr. H. L. Fisher*), for the plaintiff in error:

1. That Strominger, who took the application, delivered the policy and collected the premium and subsequent assessments,

was the agent of the company, is beyond question: Columbia Ins. Co. v. Cooper, 50 Pa. 331; Eilenberger v. Insurance Co., 89 Pa. 464; Nassauer v. Insurance Co., 109 Pa. 507. The plaintiff being innocent of fraud, and having given answers that were strictly correct and honest, is not to be held responsible for the fraud or mistake of a knavish or blundering agent of the company, unknown to him till after his loss: Columbia Ins. Co. v. Cooper, 50 Pa. 331; Smith v. Insurance Co., 89 Pa. 287; Eilenberger v. Insurance Co., 89 Pa. 464; Susq. Mut. F. Ins. Co. v. Cusick, 109 Pa. 157.

2. The court held the plaintiff estopped by reason of the act of May 11, 1881, P. L. 20, from showing that he had made correct answers. This was error. That act was not intended to entrap the insured and put him in a worse position than he occupied before. The effect of the ruling was to reverse the beneficent rule adopted by this court, and make the insured responsible for mistakes of the agents of insurance companies. It is the policy upon which the plaintiff sues. If the company desires to show misrepresentation or breach of warranty, it resorts to the application. The act simply prevents it from doing this, unless a copy has been attached to the policy. It does not make it compulsory on the assured to read the attached copy upon receiving the policy.

3. The plaintiff stated to the agent that there were incumbrances against the property aggregating over $4,000, but he was unable to give their exact amount. Any objection to the sufficiency of this answer was waived by issuing the policy: Nichols v. Insurance Co., 1 Allen 63; Bersch v. Insurance Co., 31 Mo. 555; Masten v. Insurance Co., 11 Barb. 624. That incumbrances actually paid were not discharged upon the record, will not affect the truth of the statement: Hawkes v. Insurance Co., 11 Wis. 188. Nor did the subsequent entry of judgments without notice to the company, avoid the policy, because at no time did the aggregate exceed $3,000: Penn. Mut. F. Ins. Co. v. Schmidt, 119 Pa. 449. Insurance being an indemnity, a policy should not be avoided where the incumbrances are less at the date of the fire than the amount stated in the application.

4. What amounts to an increase of risk is, however, a question for the jury: Somerset Insurance Co. v. Usaw, 112 Pa. 80;

Niagara Insurance Co. v. Miller, 120 Pa. 504; Hawes v. Fire Ass'n, 114 Pa. 431; Gummall v. Insurance Co., 12 Cush. 167; Ritter v. Insurance Co., 40 Mo. 40. And the words of insurance contracts are to receive a reasonable construction: Home Mut. Life Ass'n v. Gillespie, 110 Pa. 84; Grandin v. Insurance Co., 107 Pa. 26. Of two constructions, that is to be adopted most favorable to the insured: Franklin F. Ins. Co. v. Brock, 57 Pa. 74; Grandin v. Insurance Co., supra; Western Ins. Co. v. Cropper, 32 Pa. 351. Forfeitures are odious, and are to be enforced only upon the clearest evidence that they were intended by the stipulations of the parties: Helme v. Insurance Co., 61 Pa. 107. In this case every intendment was made against the assured.

*Mr. W. Bay Stewart* (with him *Mr. Henry C. Niles*, *Mr. George E. Neff*, *Mr. Frank Geise*, *Mr. Edw. D. Ziegler* and *Mr. J. R. Strawbridge*), for the defendant in error:

1. Strominger, under the facts as he testified to them and under the provisions of the policy, was not the agent of the company in taking the plaintiff's application. The case of Eilenberger v. Insurance Co., 89 Pa. 466, does not, as the plaintiff assumes, rule that the agent soliciting insurance is to be considered under all circumstances the agent of the company. The contrary was ruled in the case of a mutual company like this: Pottsville Mut. F. Insurance Co. v. Fromm, 100 Pa. 347. The same ruling was made in Susq. Ins. Co. v. Perrine, 7 W. & S. 348, and Cooper v. Insurance Co., 50 Pa. 307. The true rule is that the company is bound by the blundering of its agent, when he blunders within the scope of his powers: Eilenberger v. Insurance Co., 89 Pa. 466. Strominger's powers were not shown. Having signed the application without reading it, the plaintiff is bound by it: Weller's App., 103 Pa. 594; Susq. Mut. F. Ins. Co. v. Cusick, 109 Pa. 157.

2. There were three warranties in the application that were plainly violated. The existence of judgments at the time violated the warranty against present incumbrances, and vitiated the policy: Cooper v. Insurance Co., 50 Pa. 299; Blooming Grove M. F. Ins. Co. v. McAnerney, 102 Pa. 335. The subsequent entry of judgments without notice to the company, violated the warranty as to future incumbrances and had a

similar effect: Penn. Mut. F. Ins. Co. v. Schmidt, 119 Pa. 449; Seybert v. Insurance Co., 103 Pa. 282; Hench v. Insurance Co., 122 Pa. 128. The warranty that the plaintiff had had one small loss by fire, was broken by reason of the fact that he had had three, aggregating $1,375. These warranties were binding and absolute, whether the matter warranted was material or immaterial to the risk: May on Insurance, 156, 161. The act of May 12, 1881, P. L. 20, was intended to give the applicant the means of ascertaining whether his answers have been written down correctly, and he is bound to know this at his peril.

OPINION, MR. JUSTICE CLARK:

That Strominger was the agent of the company in effecting this insurance, is too plain to admit of discussion. He subscribed his name to the application as agent; he made a statement of the exposures as agent, and approved the risk as agent; and all this was brought to the immediate notice of the company before the policy issued. The company forwarded the policy to him and he delivered it, lifted the premium, embraced it in a formal report to the company at the end of the month, deducting his commissions, and sent it to the special agent. He subsequently received all the assessments and gave the receipts which were recognized by the company, and were at the trial given in evidence. He was without doubt the agent of the company in this particular transaction, and must be so regarded.

The policy contains a clause as follows:

"If any broker, or other person than the assured, shall have procured this insurance to be taken by the company, such broker or other person shall be considered the agent of the assured and not of this company."

It is said that the defendant is a mutual company, of which the plaintiff is a member, and he will be presumed to have known this regulation. But Kister was not yet a member of the company. The application was one of the preliminary negotiations to that end, and certainly he will not be presumed to have known in advance of a provision in a policy which had not yet issued. But according to our construction, the agents of the company are not embraced in this provision; the refer-

ence is to persons operating on their own account, or on behalf of the assured, and not representing the company in procuring the insurance. The use of the term, "broker," indicates the class of persons intended. Where general words follow particular ones, the rule is to construe them as applicable to subjects ejusdem generis. If it was intended by the policy to provide that the company's agent, when taking an application, was not the company's agent, but the agent of the assured, it would have been an easy matter to say so. Susquehanna Ins. Co. v. Perrine, 7 W. & S. 348, is a case of that kind. There a person preparing the application was styled as surveyor, and it was provided that such applications might be made either by the applicant " or by the surveyor," and in all cases the assured will be bound by the application, for the purpose of taking which "such surveyor will be deemed the agent of the applicant."

Assuming the truth of the matters alleged in the offer, this case bears a close analogy to Eilenberger v. Insurance Co., 89 Pa. 464; for the policy in that case contained a provision similar to that in the policy in suit, a provision, however, which contained no restrictive words whatever; and it was held that they did not apply to an agent of the company who solicited insurance, made out applications, sent them to the home office, delivered the policies and remitted the premiums. Whilst we have no particular evidence as to the authority of Strominger, these are the acts which he performed, and they were approved by the company. The other cases cited by the company on this branch are fully discussed and distinguished in the Eilenberger case, and further reference to them seems unnecessary now. " An examination of the facts in those cases," says Mr. Justice TRUNKEY, " will aid in understanding the scope of the opinions. In each there was no question but that the warranty was made, and it was conceded that if there were a mutual mistake between the contracting parties, parol evidence was admissible to reform the policy. None declares that the fraud or mistake of a knavish or blundering agent, done within the scope of the powers given him by the company, will enable the latter to avoid a policy to the injury of the insured, who innocently became a party to the contract. The authorities go far, very likely not too far, in holding the

assured responsible for his warranty, and in excluding oral evidence to contradict or vary it; but they do not establish that where an agent of the assurer has cheated the assured into signing the warranty and paying the premium, and the policy was issued upon the false statements of the agent himself, the assured shall not prove the fact and hold the principal to the contract, as if he had committed the wrong."

A copy of the application accompanied the policy, and it is argued that Kister could and ought to have read it, and, if he had done so, he would have seen the answers were untrue. These are considerations which were properly addressed to the jury. We cannot say that the law, in anticipation of a fraud upon the part of a company, imposed any absolute duty upon Kister to read his policy when he received it, although .it would certainly have been an act of prudence on his part to do so: Howard Ins. Co. v. Bruner, 23 Pa. 50; Insurance Co. v. Wilkinson, 13 Wall. U. S. 222. One thing is certain, however; the company cannot repudiate the fraud of its agent, and thus escape the obligations of a contract consummated thereby, merely because Kister accepted in good faith the act of the agent without examination.

We are of the opinion also, that if the amount of the incumbrances was not increased during the continuance of the policy and before the date of fire, there was no breach of the condition against incumbrances, within the spirit and meaning of the policy. It may be conceded that in case of a warranty, it is a matter of no consequence whether or not the act stipulated for be material to the risk. One of the objects of the warranty, it is said, is to preclude the controversy as to the materiality of the thing in question. Yet it must still be ascertained, under the ordinary rules of construction, what the thing is that is warranted, and this being ascertained, the insured is held to a full and literal performance of it: Home Life Ass'n v. Gillespie, 110 Pa. 88. But this covenant or condition against future incumbrances does not stand upon the footing of a warranty. The warranty covers the representations contained in the application, whilst the condition referred to is a provision of the policy only, and is not within the terms of the warranty. The incumbering of the premises to be insured was intended to operate as a forfeiture. Now, if it be assumed that the plaintiff's proof would

come up to the offer, which we say should have been received, it would appear that the plaintiff, at the time of the application, disclosed the fact that there were liens to the amount of $4,000 against the premises insured; that some of these were paid, but that he did not know how much; that at the time the application was made the amount of these incumbrances was less than $3,000; that at no time did they exceed that amount, nor equal the amount represented. This provision of the policy is based upon the increased risk resulting from incumbrances; a person is supposed to have less interest in the preservation of his property when it is incumbered beyond its value. If the testimony contained in the offer is true, the company was willing to assume the obligation with the incumbrances then existing, and if these incumbrances were not increased in amount during the continuance of the policy, then the company was merely held to the risk which it at first assumed, and no more. The applicant, in stating the amount of incumbrances on his property, may include not only those actually entered, but such as are liable to be entered; for if he has given a judgment note or bond, he knows that it may, and probably will be placed upon record. He may not have knowledge of the amount actually entered, but be able to state the amount in condition to be entered, and may represent the amount of liens accordingly. If the lien of one of the judgments entered should expire, it would certainly not be treated as a breach of the condition to have it revived; or, if the assured, in order to raise money to pay a lien pressing for payment, should enter another in its place of equal amount, that would not affect the risk upon the premises insured; yet, in either case, the assured may be said to "have the same incumbered." The question we have been considering was referred to, but not decided, in Insurance Co. v. Schmidt, 119 Pa. 449.

Indemnity is the real object and purpose of all insurance, and this is to be kept constantly in view, and favored in the construction of policies of insurance. Such contracts are to be construed liberally, and it is presumably the intention of the insurer that the insured shall understand that in case of loss he is to be protected to the full extent which any fair interpretation will give: Teutonia Ins. Co. v. Mund, 102 Pa. 95. "Forfeitures are odious in law, and are enforced only

where there is clear evidence that that was what was meant by the stipulations of the parties. There must be no cast of management or trickery to entrap the party into a forfeiture:" Helme v. Insurance Co., 61 Pa. 107.

The judgment is reversed, and a venire facias de novo awarded.