MACATAWA TRANSPORTATION CO. *v.* FIREMAN'S FUND INSURANCE CO.

1. INSURANCE—WORDS AND PHRASES—OUTSIDE.

In a policy of insurance covering a gasoline launch, permission to store the boat "outside," when construed with the remainder of the policy and with the application, signified that the boat might be stored out from the shore in the waters of the adjacent bay.

2. SAME—MARINE INSURANCE—EXPOSING BUILDINGS.

Under the terms of the policy providing that the distance to exposing buildings should be 500 feet, only such buildings as increased the danger because of the use of fire were intended. OSTRANDER and MCALVAY, JJ., dissenting.

3. SAME—STATUTES—BREACH OF CONDITION.

Notwithstanding 2 Comp. Laws, § 5180, providing that no policy of fire insurance shall hereafter be declared void for the breach of any condition if the insurer has not been injured by such breach or the loss has not occurred by reason thereof, the policy became void for breach of a promissory warranty that the distance to exposing buildings should be 500 feet.

Error to Ottawa; Padgham, J. Submitted November 15, 1911. (Docket No. 21.) Decided January 30, 1912.

Assumpsit by the Macatawa Transportation Company against the Fireman's Fund Insurance Company upon a policy of marine insurance. Judgment for plaintiff. Defendant brings error. Reversed.

*Gore & Harvey,* for appellant.

*Diekema & Kollen* (*Arthur Van Duren,* of counsel), for appellee.

BLAIR, J. This is an action upon a marine insurance policy covering the gasoline launch Holiday. The survey contained the following:

"55. Boat will probably be laid up and not in use from (season for which boat is to be in commission and for which insurance other than fire is to apply) October 1, 1908, to July 1, 1909.    *    *    *

"58. Give location and describe fully the building in which the boat is contained while laid up.    In water at Macatawa Bay.

"59. Give distance in feet to exposing buildings.    500 feet.

"I hereby make application for insurance on my gasoline power boat, and agree that the statements made above are true, and that during the continuance of the insurance to be written on this application (both of the original policy and any renewals thereof) the property shall be and remain in all respects as above set forth, and that the foregoing shall be deemed and taken as promissory warranties.

[Signed]        "Macatawa Resort Co.,
                "By S. A. Miller, Prest.,
                "By F. Van Ry, Master,
                        "At Chicago, Ill."

The policy contained, among other clauses, the following:

"Warranted that the vessel shall not be engaged in navigation from October 1st to June 1st, and that when laid up and out of commission, shall be safely stored at outside," etc.

"Privileged to lay up either afloat or ashore.    *    *    *

"This insurance is accepted by the assurers, and this policy is issued on the written application of the owner, now on file in the office of the assurers, which application is warranted by the assured to be true, and is accepted by both the assured and assurers as a part of this policy.

"Countersigned at St. Joseph, Mich., this 22nd day of June, 1908.

"Chas. A. Newton & Co., Fireman's Fund.    ———,
                                "Agent."

The boat was laid up in September in one of the 12 stalls of the plaintiff's boathouse, where she was either fired by an incendiary or by spontaneous combustion, and almost totally destroyed during the early morning hours of September 19, 1908.    The boat was removed from the shed

and beached, and no part of the shed took fire. The boat-house was 15 feet from the shore and in comparatively deep water. Defendant gave notice of special defense that plaintiff violated the warranties above quoted as to the location of the boat and as to the distance from exposing buildings. At the close of the testimony, defendant's counsel moved for an instructed verdict, which was denied, the case submitted to the jury, and verdict rendered for plaintiff for the agreed amount of the loss. Defendant insists that it was entitled to an instructed verdict for the reason that the policy was avoided by the continuing breach of the promissory warranties as to location and exposures.

Concerning the warranty as to location, the court instructed the jury that there was no breach, and this instruction raises one of the important questions in the case. Defendant's counsel contend that:

" ' Outside' is a plain stipulation that the property should be stored outside of any shed or building."

In considering the meaning to be given to the word "outside," as used in the policy, the policy and application must be read together. The word is not used in the application, and the only reference to the location is in answer to question 58, which asks for the location and description of the building in which the boat will be laid up. Applying the answer to the question, it is that the boat while laid up will be in a building in water at Macatawa Bay. The printed policy grants the privilege "to lay up either afloat or ashore," and the written word "outside" after the printed words " shall be safely stored at," when construed in the light of the application, naturally signifies that the boat was to be stored outside of the shore, as she actually was stored "afloat" in the waters of Macatawa Bay and outside of the shore.

Concerning the warranty as to exposing buildings, the court charged the jury as follows:

"I charge you that what is meant by the word ' expos-

ing' or 'exposure' as used in insurance matters means openness to danger, accessibility to anything that may affect especially detrimentally. The words 'exposing buildings' mean buildings erected and occupied for the use therein of dangerous elements, as fire, whereby the exposure is increased.

"A building *per se*—that is, a building in itself—is not an exposing building.

"It is the use to which the building is put that determines whether or not it is an exposing building; and if you find that at the time of the burning of the Holiday, this launch, there was no building within five hundred feet erected and occupied for the use therein of dangerous element, as fire, and where such dangerous element was used, there was no exposing building within five hundred feet, and the terms of the application and policy were not violated in that respect. Now that is a question for you to say, whether there is any proof in this case to show, under the definition that I have given you of 'exposing buildings' that there were any exposing buildings within five hundred feet; that is a question for you to determine, whether the buildings you have heard spoken of here, under the definition I have given you of exposing buildings, did increase the danger, or were any element of danger under the meaning of this term here 'exposing buildings.'"

We regard this instruction as a correct exposition of the law as applied to the contract of the parties in this case. The question in the application did not require the distance in feet to all buildings, but only to "exposing buildings," which would tend to increase the risk and might naturally be considered in fixing the rate. *Burleigh* v. *Insurance Co.*, 90 N. Y. 220; *Davis* v. *Insurance Co.*, 81 Iowa, 496 (46 N. W. 1073, 10 L. A. R. 359, 25 Am. St. Rep. 509); *Wilson* v. *Insurance Co.*, 29 U. C. C. P. 308.

The court further instructed the jury as follows:

"Counsel has stated to you something with reference to the statute in this State, being section 5180 of Miller's Compiled Laws of 1897. This statute provides that no policy of fire insurance shall hereafter be declared void by an insurance company for the breach of any condition of

the policy if the insurance company has not been injured by such breach or where such loss has not occurred during such breach and by reason of such breach of condition; and I charge you that to prevent a recovery on the part of the plaintiff in this case it is not only necessary for you to find that said boat was laid up within five hundred feet of an exposing building, but you must further find that the insurance company has been injured thereby, or that the loss has occurred while said boat was so laid up and by reason thereof."

We are satisfied that where, as in this case, there is a continuing promissory warranty, the rule laid down by this court in *King* v. *Insurance Co.*, 140 Mich. 258 (103 N. W. 616), applies.

Under this rule, if there were exposing buildings within 500 feet at the time the Holiday burned, the policy would be avoided, regardless of the fact that such exposing buildings had clearly no influence upon the loss. If, however, there were exposing buildings at the time the boat was laid up, and they had ceased to be exposing buildings at the time of the fire, the statute would apply. Whether any of the buildings within 500 feet were exposing buildings, as defined by the court, at the time the Holiday was burned, should not be difficult of determination upon another trial.

The judgment is reversed, and a new trial ordered.

MOORE, C. J., and STEERE, BROOKE, and STONE, JJ., concurred.

OSTRANDER, J. The president of plaintiff testified that within 250 feet of the boathouse in which the launch was laid up there were five or six boathouses, constructed of wood, in size 30x18 or 30x16 feet. The boathouse of the plaintiff was constructed of wood. He further testified that the engine or power house of plaintiff was about 60 or 70 feet away, the icehouse 50 or 60 feet away, the interurban freight depot 40 or 45 feet away, and five cottages were within 250 feet. It is said in the brief for plaintiff

168 MICH.—24.

that it was not possible to place the launch 500 feet away from any building, on the shore or in the water, upon the property of plaintiff or adjacent to it. The promissory warranty given with the application for the policy was in effect that there were no exposing buildings within 500 feet. Under the definitions and instructions given by the court, the jury found there was no breach of the warranty. Referring to the case of *Burleigh* v. *Insurance Co.*, 90 N. Y. 220, cited in the opinion of Mr. Justice BLAIR, it will appear that the warranty was that the insured building was "detached at least one hundred feet." It was said:

"The brevity of the language requires that something be added to complete and elucidate the meaning. The phrase may mean detached one hundred feet from any other building whatever its size or character. This would be a rigorous and severe interpretation, most favorable to the insurer and operating harshly upon the insured. So construed, it would make anything which could be deemed a building, however small or insignificant, as an icehouse, or privy, or open shed, within the prescribed distance, operate as a breach of the warranty. If a construction so literal or severe is intended by the insurer, he should at least say so by apt and appropriate language, and not ask the courts to supply it by intendment. If it be granted that such small and insignificant structures were not meant and should be treated as if they did not exist, the question would remain how small and how insignificant must they be to be disregarded, and how large and of what character to justify a conclusion of breach of the warranty, and where and upon what principles is the line to be drawn between buildings strictly such, but proper to be disregarded, and those whose presence breaks the warranty. These questions can be wisely answered in but one way. The test must be whether the building within the distance named is or is not an exposure which increases the risk. One which does not can scarcely be supposed to come within the warranty, unless such result is indicated by explicit language which will bear no other reasonable interpretation. No such language is contained in these policies, and when the courts are asked to supply a defect and complete an imperfect phrase, they should remember

that the necessity is the fault of the insurer, and construe the language in view of the natural understanding of the parties, and with justice to both. Declining to hold the phrase in the policy to be meaningless and void, we are compelled to choose between two constructions; the one rigorous and hard and producing a forfeiture, and the other natural and reasonable and supporting the obligation. We have heretofore decided that in such case the latter construction is to be preferred. (*Baley* v. *Insurance Co.*, 80 N. Y. 21 [36 Am. Rep. 570]). We hold, therefore, that the warranty in this case was that no other building, of such size and character as to constitute an exposure and increase the risk, stood within one hundred feet of the storehouse."

The case of *Wilson* v. *Insurance Co.*, 29 U. C. C. P. 308, was determined upon the point that there was no warranty. In *Davis* v. *Insurance Co.*, 81 Iowa, 496 (46 N. W. 1073, 10 L. R. A. 359, 25 Am. St. Rep. 509), the policy was to become void if there "be any change in the exposure by the erection or occupation of adjacent buildings, or by any means whatever in the control or knowledge of the assured." The policy covered corn in cribs. The assured caused or permitted a corn sheller, operated by steam power, to be placed near the cribs and used to shell the corn. In its use fire was communicated to the cribs. The trial court instructed the jury that the exposure referred to in the policy—

"In order to avoid the policy, must be by the erection or occupancy of an adjacent building, or by some means of like character; that is, some permanent erection or structure must have been placed in proximity to the crib which contained the corn, or the occupancy of some building standing at the time the policy was issued, adjacent to the said crib, must have been changed so as to increase the hazard."

There was the further specific instruction that the use of the corn sheller was not within the prohibitory clause of the policy. In holding the instruction to be erroneous, and in construing the policy, it is said that exposure from "the erection or occupation of adjacent buildings" is

especially prohibited by specific language; exposure "by any means whatever " by general language.

"The condition of the policy under consideration is against exposures. The erection or occupation of adjacent buildings is specially named, as causes producing exposure. In the general language, exposures, 'by any other means whatever within the control or knowledge of the assured,' are forbidden. The special words forbid 'the erection and occupation of adjacent buildings' so as to change or increase the exposure. If they are erected and occupied for the use therein of dangerous elements, as fire, the exposure is increased. Now it is the use of the element of fire, or other dangerous thing, that is provided against. It is plain that the buildings *per se* are not exposures, and it is equally plain that anything which causes the use of fire or other dangerous elements, by which a building is made an exposure, is *ejusdem generis*. The rule as applicable to this case does not mean that the cause of an exposure, contemplated by the general words of the condition, shall be buildings or something of the same nature or character, but shall be *ejusdem generis*, of the same nature, kind, or character, in causing exposure to fire. In our opinion the condition of the contract has not regard to the form, substance, use, or character of the thing creating the exposure. But anything in which fire is used so as to be dangerous, or any occupation when it is so used, or any acts, habits, or customs endangering the insured property, which are within the control or knowledge of assured, causes an exposure within the meaning of the conditions of the policy under consideration."

In the case at bar, the assured was asked to "give distance in feet to exposing buildings." It seems to me there could have been no misunderstanding of the meaning and purpose of the question. It means how near to the property at risk were there buildings which in their size and character exposed the risk, made it less safe, might communicate fire to it if they burned. The parties were bargaining for indemnity against loss by fire. The information asked for was "how will the risk stand with reference to exposures to fire from other buildings." The information given was that there are no buildings within

500 feet of such size and character as to expose the risk to hazard if they shall burn.   This is the idea conveyed to my mind by the decision in *Burleigh* v. *Insurance Co.*, *supra.*   To say that a barn constructed of wood, filled with combustible material, does not expose an adjacent dwelling, or barn, when the chances of loss by fire are considered, would be to state what no man believes.   So, if a factory building, constructed of wood, in which no fire was ever permitted to enter, stood near a dwelling or another factory.   Upon this point I am impressed that the learned trial judge was in error.   I agree with my Brother BLAIR upon all other points.   If the conclusions I have stated are sound, the judgment should be reversed and no new trial granted.

MCALVAY, J., concurred with OSTRANDER, J.

BIRD, J., did not sit.