MACATAWA TRANSPORTATION CO. *v.* FIREMEN'S FUND INSURANCE CO.

1. INSURANCE — TRIAL — INCONSISTENT POSITIONS — APPEAL AND ERROR.

Where plaintiff brought action for insurance under a policy of marine fire insurance, and plaintiff obtained judgment, which was reversed, on error, and the cause remanded for retrial of the issue whether the exposing buildings were within the limit stated in the application, it was not erroneous to receive evidence, offered by plaintiff on the second trial, that plaintiff had not, in fact, represented that no exposing buildings were within 500 feet of the property, and plaintiff had no knowledge of any such statement being in the written application; de-

fendant's objection that this position taken by plaintiff was inconsistent with his claim on the first trial was properly overruled, the pleadings and issues on both trials being similar.

2. SAME—PLEADING.

It is sufficient, in a declaration on a policy of fire insurance, to aver the performance of conditions precedent; it is not necessary to allege that conditions subsequent were performed or to negative matters of defense; plaintiff being entitled to meet them as they arise.

3. SAME—FRAUD—WARRANTIES—MARINE INSURANCE.

Evidence that defendant's insurance solicitor prepared and signed the application, which was described therein as a survey, for insurance on a gasoline launch, that he obtained his information from the captain of the boat who testified that he had no authority from plaintiff corporation to take out insurance and he signed the paper in haste without reading it, and that he made no representations relative to exposures, presented a question for the jury as to the making of the alleged false representations.

4. SAME—MARINE INSURANCE—SURVEY.

As used in marine insurance, the word survey imports only a plan and description of the then existing condition and mode of use of property.

5. SAME.

Having accepted a fire insurance policy referring to a survey, the insured became bound by the terms of such survey except as to such representations as were of an executory character, or related to the use or occupation of the premises subsequently to the date of the policy.

Error to Ottawa; Cross, J. Submitted November 13, 1913. (Docket No. 115.) Decided March 27, 1914.

Assumpsit by the Macatawa Transportation Company against the Firemen's Fund Insurance Company on a policy of marine insurance. Judgment for plaintiff. Defendant brings error. Affirmed.

*Gore & Harvey,* for appellant.

*Diekema, Kollen & Ten Cate,* for appellee.

STEERE, J.   This action was brought upon a certain insurance policy issued by defendant covering a gasoline launch named Holiday, which was practically destroyed by fire on September 19, 1908.   It is again before this court after a retrial following its reversal by a former decision reported in 168 Mich. 365 (134 N. W. 193, Ann. Cas. 1913C, 69).   The former opinion contains sufficient statement of the case for a general understanding of the subject of the controversy, and need not be repeated.

Under the record then presented and questions raised, it was held that the principal issue of fact for retrial was whether any of the buildings within 500 feet of where said launch was laid up for the season were exposing buildings within the language of the policy.   The trial court had instructed the jury contrary to the rule on that subject found in *King* v. *Insurance Co.*, 140 Mich. 258 (103 N. W. 616, 6 Am. & Eng. Ann. Cas. 87).

The record now presented shows that on a retrial that issue of fact was settled adversely to plaintiff; the jury finding, in answer to special questions, that there were two dwellings distant less than 500 feet from the place where the Holiday was laid up at the time of the fire.

On the second trial plaintiff, against defendant's objection, was allowed to introduce a line of testimony tending to show that, when application for insurance was made, it was not in fact represented that no exposing buildings were within 500 feet of the place of laying up said launch, and that plaintiff had no knowledge of any such statement being in the written application for a policy until after the fire had occurred. Upon this issue the jury found in favor of plaintiff, and rendered a verdict for the amount of the loss.

It is the contention of defendant that plaintiff was erroneously permitted, not only to enlarge the issue,

but to try the case upon a different theory entirely inconsistent with that upon which the first trial was had, and under the same unamended declaration. In their brief defendant's counsel state their position as follows:

"The first theory was liability under the application and policy as drawn; the second theory is predicated upon misrepresentation and fraud. We submit this declaration could not be amended to meet such proof for the reason that such amendment would necessarily state a new cause of action, which the law forbids."

The abundant authorities cited for defendant are conclusive on the proposition that plaintiff cannot be permitted upon retrial of a case to take a position wholly inconsistent with claims made upon a former trial. A comparison of the printed records of the two trials fails, we think, to disclose that plaintiff has adopted an inconsistent theory or raised a new issue on the second trial. At both trials the pleadings were the same, and the testimony along the same lines. The special notice attached to defendant's plea advised, amongst other things, it would show on the trial as a defense that the written application for insurance represented and warranted the boat burned would not be laid up within 500 feet of any exposing building, and that in fact it was laid up and stored at the time of the fire in a frame building less than 500 feet from exposing buildings. The application was made a part of the policy, though not attached to it, nor delivered with it to the insured, but was retained by the insurer. It contained 59 questions, the last of which was as follows: "Give distance in feet to exposing buildings. A. 500 feet." It purported to be signed by W. S. Miller (president of the company owning the boat), per F. Van Ry, Master.

The launch was laid up in a stall in a boathouse at the summer resort on Macatawa Bay, and was destroyed by fire on September 19, 1908, in the night-

time.   The fire originated in and  was confined entirely to the boat, which was floated from its stall while burning into open water, where it burned to the water's edge.   There were neighboring boathouses close to the one in which it was laid up, and several other buildings located within less than 500 feet, including two occupied cottages.   In avoidance of its apparent violation of the terms of its policy, plaintiff claimed, and introduced evidence at both trials, over objections, to show that the structures within the 500-feet limit had no influence upon the loss, and were not exposing buildings, and that Frank Van Ry, the master, not only had no authority to make or sign any application, but did not know the paper he signed was an application for insurance, nor did he give any information, in that connection, as to laying up of the boat; that the answers were filled out in the application by an agent of defendant, and neither Miller nor Van Ry knew any written application for insurance had been made until after the fire.   The testimony upon that subject was quite fully gone into on both trials.

On the first trial in the lower court it was assumed in the charge that the application was binding upon plaintiff, and the jury was erroneously instructed, under section 5180, 2 Comp. Laws, that, in order to prevent recovery on account of a breach of the policy by plaintiff, it was incumbent on defendant to show that it had been injured by reason of such breach. The jury evidently found for plaintiff, under this instruction, because it was not shown that any of the adjacent buildings caused or contributed to the fire. The case was reversed under the ruling in *King* v. *Insurance Co., supra.*   At the former hearing of this case in this court counsel for plaintiff also urged in their brief:

"That Frank Van Ry, the master, had no authority

and had never been instructed to make or sign any application for insurance, and that he never gave the information to defendant's agent found and contained in the application, and that Mr. Miller never knew of this application having been made or signed, and never had the application, until long after the fire had destroyed the boat."

We find no inconsistency on the part of plaintiff in theories at the first and second trials, though it may be conceded that upon the second trial more attention is given to contradicting the application, as a result of the former decision. The stated grounds of objection urged to this line of testimony on this trial related to its competency and admissibility under the declaration, rather than that plaintiff had shifted its position.

It is contended that the declaration is not sufficient to permit an attack upon the application which is a part of the policy on the validity of which plaintiff relies for recovery; that plaintiff was by its declaration affirming the provisions of the policy, including the application, and could not submit proof that the application was obtained by fraud, dishonesty, or altered after being signed, at least without an amendment, which in this case would be objectionable as presenting a new and different cause of action. We think it well settled that a declaration on an insurance policy is good if it alleges performance of conditions precedent, and that it need not aver compliance with conditions subsequent nor negative matters of defense, but may meet them on the trial as they arise. *Whipple* v. *Insurance Co.,* 20 R. I. 260 (38 Atl. 498); *Phenix Ins. Co.* v. *Stocks,* 149 Ill. 319 (36 N. E. 408); *Throop* v. *Insurance Co.,* 19 Mich. 423. In the latter case the policy relied upon by plaintiff provided, "if this policy be made and issued upon, or refer to an application, * * * such application shall be considered a part of the contract and a warranty

by the insured;" and it was held unnecessary to set the application out in the declaration when stating the contract according to its legal effect.

The application in this case was retained by the insurer, as in *Mutual Benefit Life Ins. Co.* v. *Robertson,* 59 Ill. 126 (14 Am. Rep. 8), where it is said:

"Conceding that the representations contained in the application for the policy were made warranties by the reference to them in the policy, still we cannot say that they were untrue. * * *

"Appellee was not bound to set out the application and prove its truth. This paper must have been in the custody of appellant. The company might have introduced it, and proved its representations to be false."

Shortly after the decision in *Throop* v. *Insurance Co., supra,* in which there was a dissenting opinion, old Circuit Court Rule 104 was adopted. Its provisions have been retained in the present Circuit Court Rules 3 (*c*) and 7 (*d*). Since the adoption of Rule 104 numerous cases have been decided in which plaintiffs, seeking to recover under an insurance policy, have questioned the validity of the application for insurance. Those cases, confirmed by examination of the original pleadings in the records of this court, impel to the conclusion that all the pleadings in the instant case are in harmony with settled practice, and that the declaration authorizes the testimony objected to, if otherwise admissible.

We find nothing in the previous decision of this case as then tried which limits plaintiff, on a retrial, to testimony bearing upon the question of exposing buildings. As the record then indicated, that was the important issue to be again tried; but the court did not attempt to, and could not, limit the trial *de novo* to that single question, to the exclusion of any competent testimony material to the issue, authorized by the pleadings.

Error is assigned upon the following portion of the charge. After reading question 59 and the answer, the court said:

"The plaintiff, on the other hand, contends that Frank Van Ry, who signed the application, did not read it, nor have it read to him, and was ignorant of the fact that the application contained the question and answer above referred to, that no such question was put to him, and that no such answer was made by him, that the agent of the insurance company assumed the preparation of the application, and that, if the application did contain the question and answer above set forth, the agent did not act honestly and misled him. I charge you that this is a question of fact for you to determine, and that, if you find that the contention of the plaintiff as above set forth is true and correct, then the plaintiff would not be bound by the answer to the said question, and may recover, although this boat was laid up within 500 feet of an exposing building at the time it burned."

The testimony, practically undisputed, upon which this instruction is based, showed that an oral application for insurance was made by Mr. Miller, president of the owner of the boat, at the insurance office of Charles A. Newton Company, in the Insurance Exchange, Chicago. He was well acquainted with Newton, who resided in Chicago and at Macatawa Park, occupying a cottage at the latter place a portion of the time. The boat had been recently purchased, and was then in Chicago. Miller testifies:

"Mr. Newton was not in; but the clerk in the office said they would see about it. I says, 'I am anxious to have it insured as soon as possible because we want to take the boat across the lake tonight, and I want you to see to it that we get some insurance on that boat, if it is possible, as I am going away, and I will not have time to attend to it.' They wanted to know. where the boat was. I informed them where the boat was at that time, and that the captain or somebody would be on board of the boat lying near the bridge, Randolph street bridge. I did not make any written

application for insurance.  I never did; only verbal.
For insurance I never signed any application.  I never
authorized Frank Van Ry or any other person to sign
a written application.  I did not know it was neces-
sary.

"*Q.* When did you first learn, if ever, that there
was a written application for this insurance?

"*A.* After the fire."

This policy was later received by mail, and the
premium paid.  Newton testified that he was doing an
insurance business bringing net premiums of about
$200,000 per year, and handled marine insurance
occasionally; that, after receiving this application, he
placed the insurance with the Motor Boat Insurance
Agency, of St. Joseph; that he did not see Mr. Miller
then, but—

"When I came back from lunch I was informed by
my cashier that Mr. Miller had been in there, and
had left an order for the insurance of the boat.  I
reached down in my desk where I kept papers and
took out a survey blank, and instructed one of my
clerks to go over to Randolph street slip where the
boat was to get the data so I could put the insurance
on the boat, and telegraph Mr. Kelly of St. Joe the
boat was leaving that day, and to cover it.  *  *  *
There are 59 questions and answers on that sheet
(referring to the application or 'survey').  The sig-
nature there, 'Macatawa Resort Company,' is in my
handwriting.  I signed 'Macatawa Resort Company'
to that application after it was brought back to my
office.  I put the words 'P-r-e-s-t.,' standing for presi-
dent, after the name of S. A. Miller.  *  *  *  I had
other printed supplies from Mr. Kelly; rate sheets,
and addressed envelopes, and paraphernalia for do-
ing business with him.  I had used some of these
blanks before in placing insurance on launches, and
charged 5 per cent.  *  *  *  At the time I took this
application I had been familiar with the location
known as Macatawa Park five or six years.  I knew
where the boats were laid up in winter."

On the same day Newton, after placing the insur-

ance by telegram, wrote Kelly in fuller explanation of the same, stating, among other things:

"We inclose herewith a full survey today made by the writer; the technical points having been answered by Mr. Van Ry, who is at the present time and will continue to serve as master during the coming season."

Van Ry, the captain of the boat, testified that he had no authority whatever to make application for insurance, and did not knowingly do so; that he had no knowledge any written application was made until after the boat burned, and supposed what he signed was just a "survey," giving general information about the boat, as he knew they intended to insure her before she went across the lake; that, while they were lying at the Randolph street slip in Chicago, on the day they left, a young man came aboard and said that Mr. Miller had been to their office to insure the Holiday, and wanted some information; that he asked various questions as to the length, breadth, age, make of boat, kind of engines, equipment, etc., and witness gave him the information; that he did not ask anything about laying her up or the distance to exposing buildings to witness' remembrance; that the young man was seated, writing on a board, as they talked, apparently taking down the answers on a paper; that witness did not notice what he put down or read the paper at all, thinking Mr. Miller had attended to whatever application was necessary, and that the young man was simply getting a description of the boat and inventory; said—"That he was in a great hurry and wanted to go to a ball game. He said, 'Captain, I wish you would please sign this paper, pertaining to the conditions of the boat and description of the boat.' I signed it. He jumped over the rail and run. * * * I didn't read it. Simply took his word for it."

It is to be noted that the policy is for marine in-

surance, and the application is also designated a "survey;" a "survey blank" having been used.  Van Ry, being a sailor, apparently had some knowledge of marine surveys.  This term, as used in marine insurance—

"In its strict signification, as well as in the broader meaning which it may be supposed to have as applied to the subject-matter, can be taken to import only a plan and description of the present existing state, condition, and mode of use of the property."  *Denny* v. *Insurance Co.*, 79 Mass. (13 Gray) 492.

In that case the term was used in a policy of insurance on a woolen mill.  The survey was signed by a third person without express authority.  The policy declared upon its face that it was "made and accepted in reference to a survey on file at this office."  The court, after discussing the meaning of the word in connection with insurance, said:

"Admitting the soundness and force of this argument, and that the plaintiff is bound by the survey so far as he has recognized and adopted it by accepting the policy, the question still remains to be determined, to what extent such recognition and adoption go.  *  *  *

"Such being the true import of the word 'survey,' we can have no difficulty in ascertaining the extent to which the plaintiff is bound by the representations and stipulations contained in the paper which the defendants offered in evidence at the trial.  So far as they are of an executory nature, or relate to the use or occupation of the premises subsequently to the date of the policy, it is clear that the plaintiff is not bound by them."

When Newton, the insurance agent to whom application was made for the insurance, obtained it from defendant through its agent, the former became, under the facts shown, agent of the insurer in the transaction.  *McGraw* v. *Insurance Co.*, 54 Mich. 145 (19 N. W. 927).  He at the time advised defendant that

he had made the survey, the technical points having been answered by Van Ry, which is in harmony with Van Ry's testimony. The questions of waiver and knowledge of the agent who took the application are not the controlling points for consideration. The questions raised by the testimony and portion of the charge objected to are the authority of Van Ry to make the application, and whether or not he made answers to the agent as written in the survey. We think, under the circumstances shown, such testimony was admissible, and the issues properly submitted to the jury. Ostrander on Insurance, §§ 1-3; *German-American Ins. Co.* v. *Hart*, 43 Neb. 441 (61 N. W. 582); *Wilder* v. *Accident Ass'n*, 14 N. Y. St. Rep. 365; *Kister* v. *Insurance Co.*, 128 Pa. 553 (18 Atl. 447, 5 L. R. A. 646, 15 Am. St. Rep. 696); *Brown* v. *Insurance Co.*, 65 Mich. 306 (32 N. W. 610, 8 Am. St. Rep. 894); *Haapa* v. *Insurance Co.*, 150 Mich. 467 (114 N. W. 380, 16 L. R. A. [N. S.] 1165, 121 Am. St. Rep. 627), where the rule is restated and authorities reviewed.

We find no reversible error in the record, and the judgment is affirmed.

McALVAY, C. J., and BROOKE, KUHN, STONE, OSTRANDER, BIRD, and MOORE, JJ., concurred.