## PICKERING VS. BARDWELL.

*Breach of contract of purchase of grain—Measure of damages.*

Where a purchaser of grain, to be delivered on the seller's premises, refused to perform the contract, the measure of damages for the breach *held* to be, *not* the difference between the contract price and that at which the grain was finally sold, but rather the difference between such contract price and what might have been obtained for it if sold *within a reasonable time* after the breach.

APPEAL from the Circuit Court for *Waushara* County.

The defendant appealed from a judgment in plaintiff's favor. The case is stated in the opinion.

*R. L. D. Potter* and *Wheeler & Waring*, for appellant, cited 5 Mees. & Wels., 475; 8 id., 160; 9 B. & C., 145.

*T. H. Walker* and *H. G. Webb*, for respondent.

[No brief on file.]

COLE, J. This is an action to recover damages for a breach of contract in refusing to accept and pay for a quantity of wheat. It was alleged in the complaint, that what wheat the plaintiff had then in store in his barn, amounting, as it was

supposed, to about two hundred and thirty bushels, was, on the 15th day of July, 1864, sold to the defendant for $1.85 per bushel—the defendant to receive the same on the premises of the plaintiff within the space of fifteen days next thereafter. It appeared on the trial that the agent of the plaintiff saw the defendant the latter part of July about removing the wheat. The defendant admitted that he had bought the wheat, and expected to have taken it away before, but had not yet got ready to take it, and thought it might be two or three weeks before he would be.    And in a subsequent conversation between this agent and the defendant, two or three weeks after this, the defendant said that he should take away the wheat just as he had agreed, but should take his own time.    The plaintiff testified that on the 5th of October, 1865, he went to the defendant to tender him the wheat on the contract.    The defendant then refusing to receive it, the plaintiff proceeded and sold 165 bushels at $1.10 per bushel; made flour of some; and had some on hand at the time of trial.    The plaintiff further stated that some of the crop raised in 1864 was put on top of the wheat in question, and was mixed with it.    This is all the evidence necessary to be referred to in order to understand the bearing of the instructions upon the question of damages.    The court was requested to instruct the jury:    1. That if they should find from the evidence that the plaintiff was entitled to recover, the measure of damages was the difference between the contract price and the market value of the wheat at the time when, and the place where, the defendant was, by the contract, to have received and paid for the wheat.    2. That if the jury should find from the evidence that the plaintiff might have sold the wheat at the time and place the defendant contracted to receive and pay for it, or at any time thereafter before the commencement of the action, and refused and neglected to sell the same, he could only recover the difference between the contract price and the price at which it might have

been sold; and if he might have sold the wheat at the same or a greater price than the contract price, then he could only recover nominal damages.

These instructions the court refused to give, but charged the jury that if they found from the evidence that the defendant made the purchase of the wheat as alleged in the complaint, and failed to comply with the contract by taking the wheat and paying for the same, then the rule of damages was the value of the wheat at the contract price; and if the plaintiff disposed of the wheat, or any part thereof, after the defendant failed in performing his part of the contract, the jury would apply the sum received by the plaintiff for the wheat so disposed of, together with any sum paid by the defendant at the time of making the contract, against the aggregate amount of the contract price of the wheat; and their verdict should be for the contract price, less the sums so received. We think the ruling of the court was erroneous in respect to the rule of damages, upon the facts of the case.

According to the plaintiff's case, the wheat was sold on the 15th of July, 1864, to be received and paid for within fifteen days thereafter. The defendant did not perform his contract, and the evidence clearly shows that the plaintiff elected to treat the wheat as his own property. The mere fact that the plaintiff put the crop raised in 1864 with the wheat sold the defendant, thus putting it out of his power ever to deliver the identical wheat which was the subject matter of the contract, fully warrants this view of the case. Upon what principle, then, should the damages be assessed for the failure of the defendant to perform the contract and receive the wheat? The general rule is, when the vendee refuses to accept and pay for goods sold at the time expressed or implied in the contract of sale, that the vendor may, if he sees fit, proceed and resell the goods, and charge the vendee with the difference between the contract price and that realized

at the sale. *Phillpotts v. Evans*, 5 Mees. & Wels., 475 ; *Stewart v. Cauty*, 8 id., 160 ; *Mertens v. Adcock*, 4 Esp., 251 ; *Sands v. Taylor*, 5 Johns., 395 ; *Dana v. Fiedler*, 2 Kern., 40 ; *Crooks v. Moore*, 1 Sandf. S. C., 297. But in order to have this rule apply, within what time should the vendor proceed and resell the property? May he wait any length of time, speculating upon the chances of the market, and when the price very greatly declines, as in this case, sell, and call upon the vendee to make good the difference between the contract price and the one realized? It seems to us not. In *Phillpots v. Evans*, which was an action for not accepting a quantity of wheat contracted "to be delivered at Birmingham as soon as vessels could be obtained for the carriage thereof," the vendee gave notice to the vendor on the 26th of January, that he would not accept the wheat if delivered. The wheat, at the time, was on the way by canal to the place of delivery. The question in the case was, whether the proper measure of damages was the difference between the contract price and the market price on the day notice of non-acceptance was given ; or the market price on the day when the wheat was tendered at Birmingham and refused. The court held that the vendor was not bound to sell on the day he received notice, in order to reduce the damages, but that the damages might be calculated to the time the vendee ought to have received the goods. In *Stewart v. Cauty*, which was an action for the non-acceptance of railway shares, ROLFE, B., directed the jury that if they were of the opinion that the defendant had broken his contract, the plaintiff was bound to resell the shares within as short a time as he reasonably could, and, if he did so, was entitled to damages up to the time of such resale. The court of exchequer approved of the ruling, saying damages should be calculated at the difference between the contract price and the price to be obtained within a reasonable time after breach of the contract ; and that it was for the jury to say what was such reasonable

time. In *Crooks v. Moore*, the iron was sold within a short time after the vendee's default to take it, and the court permitted the vendor to recover the difference between the contract price and the one realized.

Now the plaintiff kept the wheat in this case some fifteen months after the default of the defendant. It appears that the wheat might have been sold soon after the defendant failed to accept and pay for it. And in the most favorable view which can be taken of the case for the plaintiff, he ought only to recover the difference between the contract price and the market value of the wheat at or about the time the defendant should have received it. Perhaps the plaintiff might wait a short time after the expiration of the fifteen days, to see whether the defendant would receive the wheat as he said he would. But certainly he could not wait fifteen months, until the condition of the market was entirely changed, and then sell, and call upon the defendant to make up the deficiency between the contract price and the one realized. He was bound to sell within a reasonable time, in order to entitle himself to the right to call upon the defendant to make up the loss.

The instructions asked by the defendant and refused, were quite as favorable to the plaintiff as the facts of the case would warrant.

*By the Court.*—The judgment of the circuit court is reversed, and a *venire de novo* awarded.