## Robinson & Co. v. Roberts.

No. 1947, Okla. T. Opinion Filed April 14, 1908.

(95 Pac. 246.)

1. **SALES—Fraud—Misrepresentations — Evidence — Sufficiency.** In an action of replevin for property traded in on the purchase price of a threshing outfit, consolidated and tried with a suit for the balance due upon notes given for the remainder of said purchase price which had been foreclosed, leaving said balance due plaintiff, where the ·evidence showed a verbal agreement between plaintiff's agent and defendant that the notes and mortgage so given by him in payment therefor were to be held by the agent, and not turned in to plaintiff until defendant could take the outfit and try it for the first 10 days of the threshing season, and if it did not suit him could return it and get back his notes and mortgage so given, and in order to induce defendant to sign a contract therefor said agent represented to him that the contract contained said verbal agreement, and so read the same to defendant, who could not read the same because he did not have his spectacles, and who relied upon the statement of the agent that said order ·did contain said verbal agreement, when in fact it did not, but the same was a contract for an absolute sale of the property with covenants of warranty, and the outfit was returned because it did not do as so verbally agreed, **held,** that the finding of the jury that the defendant was induced to sign the contract by the fraud of the agent was supported by the evidence, although the evidence further disclosed that a copy of the contract was furnished defendant when signed by him, and which he did not read until the "trouble with the machine came up."

2. **SAME—Fraud—Diligence—Question for Jury.** Where defendant claims to be relieved on the ground of fraud, he must act with the utmost diligence and promptitude in discovering the fraud, and in claiming to be relieved by reason of it, and whether he has so acted, is a question of fact for the jury.

(Syllabus by the Court.)

*Error from District Court, Garfield County; before James K. Beauchamp, Judge.*

Action by Robinson & Co. against C. F. Roberts. Judgment for defendant, and plaintiff brings error. Affirmed.

On November 25, 1903, Robinson & Co., a corporation, plaintiff in error, plaintiff below, filed in the district court of Garfield county, Okla., its amended petition in replevin against C. F. Roberts, defendant in error, defendant below, to recover possession of one sixteen horse power traction engine, Stephens make, of the value of $500, and one Reeves separator, with wind stacker, weigher, and drive belt, of the value of $200, by virtue of the terms of a written contract between plaintiff and defendant, dated June 13, 1903, a copy of which was attached thereto and marked "Exhibit A," wherein, as is alleged, defendant promised to, and did thereby, sell plaintiff the property therein described in part payment of certain other personal property therein described purchased of plaintiff by defendant, and wherein it was stipulated between them that defendant should deliver the property herein sought to be replevined before plaintiff should deliver to defendant said property bought by him of it, and which defendant refuses to surrender on demand. For answer defendant filed a general denial.

On November 12, 1904, plaintiff filed an amended petition in an additional action, and stated in substance that on the ——— day of June, 1903, plaintiff and defendant entered into a contract, a copy of which was filed therewith and marked "Exhibit A," whereby plaintiff sold defendant one sixteen horse power right-hand traction engine, with full length cab and coal stack, one 32½x52 Bonanza separator, with Robinson self-feeder, American weigher, and wind stacker attached, one Gandy drive belt 150 feet and eight inches, four ply, one canvas cover, one tank, pump, and hose, one adjustable screen to be put in extra, subject to the conditions of the warranty printed in said contract,

and in payment whereof defendant agreed to pay plaintiff the sum of $1,550, evidenced by certain notes set forth in the complaint. It is further alleged that in addition defendant agreed to transfer to plaintiff as part of the purchase price of said property one sixteen horse power Stephens traction engine and Reeves separator, with wind stacker, weigher, and drive belt, and pay it the additional sum of $250, evidenced by certain promissory notes set forth in the complaint; that all of said notes were payable to plaintiff, and were secured by a chattel mortgage on the machinery bought of plaintiff by defendant, which said notes were to be turned over in payment to plaintiff before delivery of said purchased property; that pursuant thereto plaintiff delivered said property to defendant, but that he had failed and refused to deliver to plaintiff the property therein agreed by him to be delivered, and that plaintiff has done all that it contracted to do in the premises; that pursuant to said contract, and to secure said notes defendant, on June 18, 1903, made, executed, and delivered to plaintiff a chattel mortgage on the machinery so sold him by plaintiff, a copy of which is filed with its complaint and marked "Exhibit G"; that the debt evidenced by said notes becoming due and payable, plaintiff had foreclosed said mortgage according to the terms thereof, and had sold thereunder the property sold defendant, as aforesaid, for the sum of $1,325, and had credited the same upon said notes, leaving a balance due thereon of $544.45, for which it asked judgment.

For answer to this petition defendant says that on the ——— day of June, 1903, one J. M. Brandt, as agent for plaintiff, represented that he had in his possession in the city of Enid a certain threshing outfit set forth in Exhibit A to plaintiff's petition; that the same was new, well made, and of good material, and with proper management would do as much and as good work as any other of the size and made for the same purpose; that he desired to sell the same, and that he would allow defendant to take it out and try it and determine whether or not it would per-

form the work as represented; that thereupon they agreed that defendant should take said threshing outfit at the beginning of the threshing season in 1903, use the same for a period of 10 days, and if it worked satisfactorily it was then to become the property of defendant, for which he would pay plaintiff $1,800, and also deliver to said agent one sixteen horse power Stephens traction engine and a Reeves separator, wind stacker, weigher, and drive belt, the property of defendant; that said indebtedness of $1,800 was to be evidenced by five promissory notes due thereafter at stated intervals; that pursuant to said verbal agreement he called on said agent for the threshing outfit for the purpose of taking and trying the same, which was delivered to defendant, at which time said Brandt represented to defendant that it was necessary for him to execute the notes above referred to and set forth in the petition, and leave the same with him to be returned to defendant in case the threshing outfit proved unsatisfactory, and if, on the other hand, said notes were then to be delivered to plaintiff and become its property, the sixteen horse power Stephens traction engine and the Reeves separator, with wind stacker, weigher, and drive belt, were, in that event, to be also delivered to plaintiff. At the same time said Brandt represented to defendant that it was necessary to sign some writing to the effect that said threshing outfit had been delivered to defendant in accordance with their said verbal agreement, and he prepared a paper partly in printing and partly in writing, which he said and represented to defendant contained their stipulation and verbal agreement above set forth; that he would retain said contract and agreement in his possession and under his control, and that it would only be delivered to plaintiff after the said defendant had tried said threshing outfit and accepted it, and that said writing would be delivered together with the notes to defendant if he decided not to accept the threshing outfit after giving it a fair trial; that, relying upon the statement of J. M. Brandt, the said agent, and believing that to be true, the said J. M.

Brandt ˙ pretending to read the said agreement and contract, and believing that he read the same correctly, and relying upon him in that particular, being unable at the time to read said contract on account of his˙ eyes, he signed said contract presented and read to him by the said J. M. Brandt, the said J. M. Brandt, as aforesaid, representing and stating to the effect that the said writing was in no way to affect or vary the terms of their said verbal agreement; that according to said verbal agreement defendant took said threshing outfit for the purpose of trying to see if it met the requirements and performed the work that it was represented to do; that said Brandt requested him that if it did not do so to at once notify him of any defect and he would send an expert or some one to remedy any defect that might be discovered in the outfit; that he took the same and gave it a fair trial, and that the same wholly failed to ·do the work as represented; that he notified said Brandt of the defects therein; that he and others acting under him took charge of the machinery and attempted to put it in working order, which they entirely failed to do in certain particulars specifically set forth in the complaint; that after repeated efforts so to do defendant notified said Brandt that he could not accept the said˙ threshing outfit, and offered to return the same to him in the store-house of plaintiff from which it was taken; that thereupon said Brandt and defendant verbally agreed that said Brandt take possession of said outfit and demonstrate at his own expense that the same would perform the work as represented, failing in which he would keep the same and return to defendant the purchase-money notes sued on, but if he succeeded in so doing the sixteen horse power Stephens traction engine and the Reeves separator, with wind stacker, weigher, and drive belt, were to be delivered to plaintiff; that pursuant ·thereto said Brandt, after repeated attempts to make the outfit do the work as represented, finally abandoned it, after the same was practically torn to pieces in an effort to do so; and that at no time did plaintiff ever deliver said threshing outfit to him as the pur-

chaser thereof under the pretended contract marked Exhibit A, or any other contract, his signature to which was, in effect, procured by fraud and misrepresentation, and said notes are without consideration, and said threshing outfit never by him accepted.

To this answer plaintiff filed reply, in effect, that at the time said contract was signed defendant took away with him a copy thereof given him by Brandt, and was then chargeable with notice of its contents, and was guilty of negligence in raising any objection thereto.

*Charles West* and *Winfield Scott*, for plaintiff in error.
*Denton & Denton*, for defendant in error.

TURNER, J. (after stating the facts as above). By agreement these causes were consolidated and tried to a jury, which returned a verdict in favor of defendant. Plaintiff appealed, and the first assignment of error is that the court erred in refusing to instruct the jury at the close of the testimony on both sides as requested by plaintiff:

"That this is not a case under the law and the evidence wherein the minds of reasonable men may differ, and you are instructed to return a verdict for plaintiff for the amount due on the notes, which the uncontradicted evidence shows is $554.40, with six per cent. interest from October 12, 1903, and for the possession of the property sought to be replevined."

This, in effect, was a request for the court to instruct peremptorily for the plaintiff, and the first question for us to consider is, was there sufficient evidence of fraud to support the verdict? In *Gulf, C. & S. F. Ry. Co. v. Ellis,* 54 Fed. 481, 4 C. C. A. 454, Justice Caldwell, speaking for the court, said:

"If there is any evidence, direct or circumstantial, fairly tending to support the verdict, it must stand. Every presumption is in its favor, and all doubts must be resolved in its favor. This court will not weigh or balance the evidence."

The verdict of the jury, in effect, found that defendant was induced to sign the order for the threshing outfit in question by

the fraudulent representations of Brandt, and that the contract be-
tween plaintiff and defendant pertaining thereto was as set forth
in defendant's answer. Tested by the above rule, let us see if
the evidence is legally sufficient to support the verdict. The proof
shows that about June 13, 1903, J. M. Brandt was agent for plain-
tiff, and located in Enid, Okla.; that defendant was a farmer and
lived a few miles in the country; that about that time defendant
was looking around to buy or trade for a threshing outfit and ran
across Brandt, who stated that he had a machine in Enid that he
would trade for defendant's old outfit; that they talked the mat-
ter over several times, and finally agreed that defendant would
let Brandt have his old outfit and give him $1,800 for the one
Brandt had in stock in Enid, provided that on 10 days' trial after
the threshing season commenced it was found by defendant to do
good work and thresh 1,500 to 2,000 bushels a day. No other
than a verbal contract was spoken of between the parties until de-
fendant went to get the outfit from Brandt, at which time Brandt
wanted a contract and things fixed up to show that the machinery
was turned over to the defendant, and so informed him, and that
he would hold the notes, mortgage, and contract in his possession
and permit defendant to hold his outfit in his possession until
defendant had the 10 days' trial agreed to, and that, if defendant
accepted the property after trying it, it was understood between
them that the notes and mortgage were to be turned in to the
company; that in case the outfit did not do as verbally agreed be-
tween them it was to be turned back to Brandt, and plaintiff's
contract, notes, and mortgage were to be returned to the defend-
ant. This was done with that understanding, and the notes and
mortgage set forth in this cause were prepared and delivered to
Brandt. At the same time Brandt presented to him to sign a
contract, of which Exhibit A to plaintiff's petition is a copy,
which purports to be an absolute sale of the threshing outfit by
plaintiff to defendant in consideration of $1,550, defendant's old
outfit therein described as "a sixteen horse power Stephens trac-

tion engine and a Reeves separator, with wind stacker, weigher, and drive belt," payable according to the terms of three promissory notes of $450 each, and further containing covenants of warranty on the part of the seller. The verbal agreement above set forth is nowhere mentioned in said contract. When presented for defendant's signature, he did not read it, because he did not have his spectacles, and depended on Brandt to read it for him, which he did.

Defendant testified:

"He read the contract down to where it stated in the original contract that according to our verbal contract where I was to have 10 days to try the machinery, if it wasn't satisfactory, it wasn't mine, and quit. He said the other didn't amount to anything; just kind of machine form; didn't concern our verbal contract at all. Q. Did you rely upon his statement as to whether or not he read the contract that you signed? A. Yes, sir; I relied on it."

And again:

"Q. What part did he read you? A. He read the contract the same as our verbal contract. * * * He read out what I understood the verbal contract was, but I do not think he read anything about the notes or any mortgage."

At that time Brandt did not tell him not to read the contract, and did not read it all to defendant. Defendant further said:

"Q. He did not tell you what else was in it? A. No; just read on down to where I tell you. Then he said: 'This is just merely machine form; don't amount to much.' * * * Q. He didn't read the lower part of the instrument at all? A. No, sir."

Plaintiff took the threshing machine outfit home with him, together with a copy of the contract which Brandt gave him, which he "threw down in the house somewhere, and never looked at it at all or read what was in it until after the difficulty came up about the machinery." When he did notice it he observed for the first time that it differed from their verbal agreement. After 10 days' trial by defendant, the outfit proving unsatisfactory, he notified Brandt, who attempted to make it do as verbally agreed, but failed.

Brandt afterwards put an expert on the machine, who also failed to make it do as agreed, during which time it was turned over to Brandt by the defendant, and afterwards ran out in the public highway and left by the agents of Brandt, and where it was when this .mortgage was foreclosed. About that time, to wit, August 6, 1903, defendant wrote plaintiff this letter:

"Mr. Robinson, Dear Sir: In regards to your machine and contract I had ten days triel and it failed to do the work I turned it back to your agent Mr. Brant and then wee maid another verbel contract before witnesses that he was to make the machen do the work and he put an expurt in charge of the machen and he failed to make it do the work and he was fired out of the field with the machen broke and he had full charge of the machen and he left it in the road and you had better see me and investigate this matter. Yours truly, C. F. Roberts."

Defendant's old outfit was never turned over by him to plaintiff. We are not unaware that Brandt testified that no such verbal agreement was made; that he and defendant talked the matter over thoroughly before the order was signed; that he told him nothing about a 10 days'.trial of the machinery before purchase; and that he told him nothing about holding the notes and mortgage given for the purchase price and sued on in this cause; and returning the same if the machine did not suit him. And the witness Brooks, an employe of the plaintiff at that time, testified that he did not know of any such verbal agreement; that the order was written by Brandt and signed by defendant in his presence, at which time Brandt gave defendant a copy thereof; and that "there was no verbal contract any more than is in that order, that is, in my presence"; also that the order was dated June 13, and the notes and mortgage June 18, 1903. But we will not "weigh or balance the evidence." We think it sufficient to say, in the light of authority, that the evidence is ample to support the verdict.

*Warden, Bushnell & Glessner Co. v. Whitish,* 77 Wis. 430, 46 N. W. 540, was a suit to recover the purchase price of a Champion

light binder, manufactured by plaintiff, and delivered to defendant under a written contract with a warranty annexed. The answer alleged, and the proof showed, that the contract was signed under the false and fraudulent representations of the agent that said "binders were as good as any other binder"; that if defendant would buy one he might take it and try it until he was satisfied, and if it was not as good as they had represented, and he was not suited with it, he could return it at any time and not pay for it; that the defendant was induced by such representations to take one of plaintiff's machines upon such terms; that thereupon said agent produced and asked defendant to sign a paper, which he then represented to defendant as nothing more than an order for a machine upon the terms and conditions stated; that said agent did not read said paper to him; that the defendant is and was an illiterate person, incapable of reading and writing, and relying upon such representations he signed the paper and received from the plaintiff a machine; that upon trial under the supervision of plaintiff's agent it was found not to be such a machine as represented by him, nor made of the materials represented, and that it did not operate as had been represented by him; that the defendant thereupon notified the agent of the plaintiff that he did not like the machine, and would not keep it; that said agent thereupon again tried said machine without being able to make it work as represented; that defendant thereupon informed said agent that the machine was not such as he had ordered and did not do good work; and that he would not keep it, and would return it. The court held that the verdict was supported by the evidence, and said:

"This is not the case of a party, in the absence of fraud or mistake, failing to know the contents of a written instrument signed by himself by reason of his own negligence or want of reasonable care, as in the cases cited by the learned counsel for the plaintiff, and many others which might be cited, as, for instance, *Herbst v. Lowe*, 65 Wis. 316, 26 N. W. 751, where the distinction

between those cases and cases like this is pointed out. Certainly no one will contend that a person can procure the signature of a party to a contract by false representations, and then enforce the contract on the ground that, had the party so deceived been more vigilant, he would have discovered the fraud in time to have withheld his signature from the contract. In other words, a person cannot procure a contract in his favor by fraud, and then bar a defense to it on the ground that, had not the other party been so ignorant or negligent, he could not have succeeded in deceiving him."

*Chapman et al. v. Atlanta Guano Co.*, 91 Ga. 821, 18 S. E. 41, was a suit upon a promissory note. Defendant pleaded fraud in obtaining his signature thereto. There was judgment for the plaintiff. The court, speaking through Justice Lumpkin, in reversing the case said:

"The pleas, in effect, state that the plaintiff's agent represented the note to be for $53.10, while in point of fact it turned out to be a note for $90.20. This is not a matter for a mere difference of opinion. If the pleas speak the truth, the plaintiff's agent perpetrated a palpable fraud upon the defendants, involving nothing short of actual dishonesty. It is true that in the last plea the defendants aver that the note was signed upon the representation that it was for the account at the price stated in the plea, to-wit, $53.10, without alleging by whom this representation was made; but, construing all the pleas together, we think it was sufficiently alleged that the representation in question was made by the plaintiff's agent, and that the note was signed upon the faith of this representation. * * * * In the case at bar one of the pleas alleges that the note was signed at night, when defendant signing the same could not well see, and another avers that the note was made at night, when defendant could not see the amount. These allegations, it is true, are not strong. They do not show that a light might not easily have been obtained, if the defendant had desired it, or that there was any haste about the transaction, or that the plaintiff's agent urged or requested an immediate execution of the note, or did anything, except the making of the representations complained of, to prevent the defendant from fully informing himself of the amount set forth in the note. Still, we think the pleas contain enough to authorize the case to be sub-

mitted to a jury, and allow them to determine whether or not a fraud was actually practiced upon the defendant."

So we say in this case that, as the testimony of defendant shows that the agent represented the paper to contain the prior verbal agreement which, in point of fact, it did not do, but turned out to be a contract of sale with covenants of warranty, this was not a mere matter of difference of opinion, or the misstatement of the legal effect of the instrument, but was evidence of fraud sufficient, under all the circumstances, to go to the jury.

In *Wood v. Cincinnati Safe & Lock Co.,* 96 Ga. 120, 22 S. E. 909, the court said:

"Whatever may be the rights of third persons, it is a rule of law of universal acceptance that as between the original parties thereto, fraud in its procurement voids a contract, and this upon the theory that, the consent of the parties being necessary to the binding force of the contract, if one apparently consenting by the execution of a written contract can show that he did not in fact consent to its terms as therein expressed, but that his apparent consent was induced by false and fraudulent practices, by means of which he was overreached by the other party, and, without negligence upon his own part really deceived as to the terms of the contract, he would be entitled to be relieved from its apparent obligations."

See, also, *Hopkins v. Hawkeye Insurance Co.,* 57 Iowa, 203, 10 N. W. 605, 42 Am. Rep. 41, where the court said:

"It is incumbent upon the party executing an instrument to exercise reasonable care and diligence to ascertain its contents. Ordinarily, however, what constitutes reasonable care and diligence is a question of fact, to be determined by the jury in view of all the circumstances. In this case the plaintiff was unable to read the note on account of the absence of his spectacles. Whether he was justified in relying upon the reading of the agent, and in neglecting to call upon his wife or son, who were present, constitutes not a question of law, but one of fact. The question is, did he act as persons of reasonable and ordinary care would usually do under like circumstances? If he did, he was not negligent."

See, also, *Jeremiah Taylor v. Thomas Atchison,* 54 Ill. 197, 5

Am. Rep. 118; *Union Pacific R. R. Co. v. Harris,* 158 U. S. 326, 15 Sup. Ct. 843, 39 L. Ed. 1003; 9 Cyc. 390, and cases cited.

But the plaintiff insists that the court erred in overruling his request for a peremptory instruction, because "the placing in defendant's hands of a copy of the order of the 18th of June and his failure to object to its terms until the 6th of August is a waiver of any objection to the terms of the contract." In other words, plaintiff, in effect, contends that by failing to read the contract and object to the terms thereof defendant was guilty of such negligence as amounts to a waiver of the fraud in procurng the contract, if any such there were. In support of this proposition plaintiff cites *N. Y. Life Ins. Co. v. McMaster,* 87 Fed. 63, 30 C. C. A. 532, where the court said:

"Neither the company nor its agent, therefore, made any representation, or promise, or used any artifice or deceit, to prevent the insured from learning the terms of his policies. Their contents were not concealed. They were not misrepresented. The deceased must accordingly be conclusively presumed to have known their terms when he accepted them. If one can read his contract, his failure to do so is such gross negligence that it conclusively estops him from denying knowledge of its contents, unless he was dissuaded from reading it by some trick, artifice, or fraud of the other party to the agreement." (Citing authorities.)

This undoubtedly is the rule in case of the absence of fraud on the part of the agent procuring the contract. But in this case the jury found, and we have held, that there was sufficient evidence to warrant a finding that there was fraud on the part of Brandt in procuring defendant's signature to the contract, and hence the rule above cited does not apply. We do not accede to the proposition that under the circumstances the law imposed a positive duty on the defendant to read the contract. That being the case, he cannot be charged with negligence in failing so to do; and that being true, there is nothing upon which to predicate a waiver on his part.

In *Kisler v. Insurance Co.*, 128 Pa. 553, 18 Atl. 447, 5 L. R. A. 646, 15 Am. St. Rep, 696, the court said:

"We cannot say that the law, in anticipation of a fraud upon the part of a company, imposed any absolute duty upon Kister to read his policy when he received it, although it would certainly have been an act of prudence on his part to do so. *Insurance Co. v. Bruner*, 23 Pa. 50; *Insurance Co. v. Wilkinson*, 13 Wall. (U. S.) 222, 20 L. Ed. 617. One thing is certain, however, the company cannot repudiate the fraud of its agent, and thus escape the obligations of a contract consummated thereby, merely because Kister accepted in good faith the act of the agent without examination."

In *Strohn v. Railway Co.*, 21 Wis. 562, 94 Am. Dec. 564, the plaintiffs had a verbal agreement with the defendant railway company as to the terms of shipment of a quantity of freight. The freight was delivered to the railway company, and afterwards, upon demand, the company delivered to the plaintiffs bills of lading therefor. These bills of lading contained conditions of shipment inconsistent with the verbal agreement of the parties. The plaintiffs having received and retained these bills of lading without reading them or knowing their contents, the railway company insisted that they were bound by the conditions contained in the bills of lading, which had been received without objection. In answer to this contention the court said:

"Having previously entered into a special verbal agreement, he may rightfully assume, in the absence of notice to that effect, that it is embodied in the paper or receipt, or at least that the receipt contains nothing contrary to it. It is in the nature of a direct fraud or cheat for the company or its agents, after having entered into a verbal agreement, thus wrongfully to insert a contract of an entirely different character, and present it to the party without directing his attention expressly to it and procuring his assent. It is no answer for the company in such a case to say that the other party should have been more diligent and watchful, and should have detected the fraud."

And to the same effect is *Boorman v. Express Company*, 21 Wis. 154 .

In *McElroy v. Assurance Co.*, 36 C. C. A. 615, 625, 94 Fed.

990, 1000, the Circuit Court of Appeals for the Ninth Circuit say:

"It would certainly have been an act of prudence on his part to read the entire policy, but his neglect to do so cannot excuse the company for the default of the agent in not writing the contract in accordance with the representations made by the insured. The insured had a right to rely upon the agent's performing his duty of making the contract in conformity with the information given, and the agent's failure to do so, whether the result of a mistake or of a deliberate fraud, cannot operate to the prejudice of the insured. The contract of insurance is pre-eminently one that should be characterized by the utmost good faith on both sides."

In *Fitchner v. Association,* 103 Iowa, 276, 72 N. W. 530, the Supreme Court of that state say:

"The insured ordinarily rely upon the agent to properly set out the facts in the applications, and Laub did as men usually do in assuming that the defendant's agent had done his duty. *Stone v. Insurance Co.,* 68 Iowa, 737, 28 N. W. 47, 56 Am. Rep. 870; *McComb v. Insurance Co.,* 83 Iowa, 247, 48 N. W. 1038. The mere failure of the assured to read his application, or the copy of it in the policy, does not establish negligence. *Hagan v. Insurance Co.,* 81 Iowa, 321, 46 N. W. 1114, 25 Am. St. Rep. 493; *Donnelly v. Insurance Co.,* 70 Iowa, 693, 28 N. W. 607; *Boetcher v. Insurance Co.,* 47 Iowa, 253. Nor is the omission to read the policy negligence. *Barnes v. Insurance Co.,* 75 Iowa, 11, 39 N. W. 122, 9 Am. St. Rep. 450; *Jamison v. Insurance Co.,* 85 Iowa, 229, 52 N. W. 185; *Boetcher v. Insurance Co., supra.* Laub had no reason to suppose the policy and application were drawn differently than understood."

But is not the question whether one who claims to have been drawn into a fraudulent purchase has exercised the proper care and diligence to discover the fraud, and with due promptness in repudiating his contract on the ground of fraud, a question for the jury under all the circumstances of the case? We think so. In *Upton v. Tribilcock,* 91 U. S. 45, 23 L. Ed. 203, the defense was fraud in procuring a stock subscription. The trial court submitted the question of fraud, together with the question under

consideration, to a jury, and the Supreme Court in passing, in the syllabus, said:

"Parties who claim to be relieved on the ground of fraud must act with the utmost diligence and promptitude in discovering the fraud and in claiming to be relieved by reason of it, and whether they have so acted is a question of fact for the jury."

Hence we cannot say as a matter of law that defendant was guilty of such negligence in not reading his contract or under all the facts and circumstances of this case as to amount to a waiver of the fraud in procuring the contract.

Plaintiff was undoubtedly entitled to have this phase of the case submitted to the jury on proper instructions, but since he did not request it he cannot now complain. It follows that the court did not err in refusing to give said instruction, or in giving the one as follows:

"If you believe from the evidence that at the time the contract relied on in this action was made the defendant was unable to read writing readily, on account of defective eyesight, and requested the said J. M. Brandt to read the said contract to him, and said Brandt did so read it to the defendant, and if you further believe from the evidence that the said J. M. Brandt when reading the said contract changed the same in any material part, thus inducing the defendant to sign said contract when he otherwise would not have done so, this would constitute a fraud in law, and such contract is not binding on said defendant. The same is wholly invalid as to him."

The last assignment is that the court erred in giving the following:

"You are further instructed that, if you believe from the evidence that the defendant has clearly shown by a preponderance thereof that he was induced to sign the contract by the actual deception of plaintiff's agent, against which ordinary prudence may not have guarded him, and also, having so signed, the property so ordered failed to do what such machinery should do in the hands of competent men, then you will find for the defendant."

The error, if any there be, in this instruction, is not clearly pointed out, and we can think of none except that it might be

objectionable on the ground of repetition, as it is an almost exact reiteration of the first half of instruction No. 4 given for plaintiff. The same idea is conveyed in both in almost identical language. We can see no error in this, as repetition is not a ground for reversal. 11 Enc. Pl. & Pr. 299.

Furthermore, if error therein exists, it is such that plaintiff cannot take advantage of, being himself responsible therefor by requesting and having the court give for him substantially the same charge, thereby misleading the court.·

"The defendant will not be allowed, then, to take advantage of his own wrong, or the errors of the court induced on·his own motion, and then compel the plaintiff to suffer the consequences."

(*Union Pacific Ry. Co. v. Harris,* 63 Fed. 800, 12 C. C. A. 598.)

The judgment of the lower court is affirmed.

Williams, C. J., and Dunn and Hayes, JJ., concur; Kane, J., dissents.