## THEODORE MAXFIELD CO. v. ANDRUS *et al.*

No. 6149. Opinion Filed March 7, 1916.

(155 Pac. 1163.)

1. **APPEAL AND ERROR—Findings of Fact—Evidence.** Where a case is tried by the court without the intervention of a jury upon controverted questions of fact, and there is evidence reasonably tending to support its findings, such findings will not be disturbed on the weight of the evidence.

2. **SAME—Trial—General Finding—Effect.** Where the testimony is partly oral and conflicting, and the finding of the court is general, such finding is a finding of every special thing necessary to be found to sustain the general finding, and is conclusive upon this court upon all doubtful and disputed questions of fact.

(Syllabus by Robberts, C.)

*Error from County Court, Custer County;*
*J. C. McKnight, Judge.*

Action by the Theodore Maxfield Company, a corporation, against George W. Andrus and another, doing business as Andrus & Son, and J. S. Huston, trustee in

bankruptcy for the estate of Hume & Porter. Judgment for defendants, and plaintiff brings error. Affirmed.

*McLaury & Hopps,* for plaintiff in error.

*George T. Webster* and *Nichols & Lyle,* for defendants in error.

Opinion by ROBBERTS, C. This case comes from the county court of Custer county, on appeal from a judgment rendered against Theodore Maxfield Company, plaintiff below, and also plaintiff in error. The case was dismissed by the lower court as to defendants George W. Andrus and Charles B. Andrus, alleged to be doing business as Andrus & Son, with judgment against plaintiff for costs. The action was brought to recover the sum of $416.21, for goods and merchandise shipped by plaintiff to defendants Andrus, at Thomas, Okla., under date of November 4, 1912. The goods were received by defendants Andrus under the facts and circumstances as follows:

G. D. Porter and C. D. Hume, doing business under the firm name and style of Hume & Porter, had, for several months prior to August 12, 1912, been engaged in the mercantile business at Thomas, Okla. On that day they, as parties of the first part, and George W. Andrus and Charles B. Andrus, as parties of the second part, entered into a written contract, whereby the second parties agreed to buy from the parties of the first part all their stock of merchandise located in the town of Thomas, for a certain named consideration, said transfer to be completed on or before November 1, 1912. Upon the execution of said contract, defendants Andrus went into the store of parties of the first part, assisted in taking an inventory of the business, and helped in managing, operating, and running

said store up to about the 22d day of November, 1912. Hume & Porter had been customers of plaintiff for something more than a year prior to the 12th day of August, 1912, and on or about the 30th day of October, 1912, W. E. Smith, traveling salesman for plaintiff, in the regular course of his duties as such salesman, called at their place of business for the purpose of making further sales to them. It is conceded that when Mr. Smith entered the store Mr. Porter advised him that they had sold out, and introduced him to Andrus & Son as the new proprietors. Plaintiff claims its agent sold the bill of merchandise to defendants Andrus, which they deny, and insist that the goods were bought for and on the credit of Hume & Porter.

The defendants, further answering plaintiff's petition and by way of their cross-petition against G. D. Porter and C. D. Hume, allege, in substance, that on or about the 1st day of November, 1912, said G. D. Porter and C. D. Hume, copartners as Hume & Porter, and these defendants Andrus entered into a written contract, whereby they were, upon certain conditions, to exchange properties, including the stock of goods involved herein, and at the time owned by Hume & Porter. At the time plaintiff claims to have sold the bill of goods to defendants, they were in the store of Hume & Porter, which they were to purchase upon the happening of certain conditions, assisting said owners of the store, as clerks, without pay, and for the purpose of guarding and watching said stock of goods, for the reason that it was contemplated and agreed in said contract that if Hume & Porter could comply with the bulk sales law, and arrange for the payment of their debts, said contract for the exchange of properties, including said store, would be closed as of August 26, 1912, that

being the date upon which the invoice had been taken of the stock, and it was agreed that if the exchange was consummated, all goods in the invoice and all money taken in, in the course of business, from sales, would become the property of and be owned by these answering defendants, and for the purpose of avoiding the necessity and expense of a new invoice, these defendants were requested by Hume & Porter to remain in the store to guard and protect the store, and to keep an account of all sales made and cash received, in contemplation of the ultimate exchange of their properties. Defendants further allege that while so employed in said store and working for said Hume & Porter, the plaintiff, by its traveling salesman, called upon Hume & Porter, soliciting trade and offering its merchandise for sale, and that plaintiff was then and there notified of the executory contract above referred to, between these defendants and Hume & Porter, and was also told that it was probable that said contract could and would be consummated within a short time, and that Hume & Porter ordered the merchandise described in plaintiff's petition, but these defendants did not know or understand that the goods were contracted in their names, but did understand that the same were contracted for in the name of Hume & Porter, and they did not know or understand that said goods were to be consigned to them until they arrived at their destination at the depot at Thomas, and said defendants did not take said goods from the depot, nor receipt for the same, nor authorize any other person to do so, but, on the contrary, defendants are informed that Hume & Porter receipted for said goods in the name of these defendants, and brought them to the storeroom, and mixed them with the merchandise already in said store; that soon after said goods were received at said store it

became known that Hume & Porter could not comply with the terms of said contract in the matter of the bulk sales law, and that they were practically insolvent and were indebted for the greater part of the goods in said store, and had no money nor resources outside of said stock to pay their debts. Thereupon the transactions between these defendants and Hume & Porter came to an end and these defendants left said store, and announced to Hume & Porter that they would proceed no further with said transactions. While they were so engaged in said store there was received and turned over to them as trustees and bailees, money to the amount of $650 for Hume & Porter, which would, at the time they left said store, have been turned over to Hume & Porter but for the facts above stated, and these defendants are holding said money to be used in payment of any judgment that plaintiff may recover against them.

It also appears from the record that soon after these goods had been purchased and mingled with the goods in the store in controversy, the firm of Hume & Porter was adjudicated bankrupt, and J. S. Huston was, in due time, appointed as trustee of said bankrupt estate.

The defendants further allege that C. D. Hume and G. D. Porter are proper parties defendant in said action, and should be brought in and made parties thereto, and that the plaintiff recover judgment against them for the amount claimed against these answering defendants, and that they further be required to show cause why the $650, in the hands of these defendants as above stated, should not be applied upon payment of any judgment rendered herein against them, or against Hume & Porter, and that said money be adjudged a trust fund in the hands of these

defendants, to be applied in payment of any judgment that might be rendered against them.

It also appears that Hume & Porter were not made parties to the case, but that J. S. Huston, as trustee in bankruptcy, for Hume & Porter, was made a party defendant.

To defendants' answer, plaintiff replied by general denial.

After being made a party defendant, J. S. Huston, as trustee, answered: (1) By general denial; (2) alleging bankruptcy proceedings against the firm of Hume & Porter, and that he was the duly appointed, qualified, and acting trustee of said estate; (3) setting up the contract of sale of said stock of goods from Hume & Porter to defendants Andrus; (4) that while Andrus & Son were in possession of said stock of goods, certain goods were purchased from the plaintiff, and that said goods went into the stock of goods in controversy, and were mingled with said stock, and part of them, together with other assets belonging to said estate, were sold under order of the bankruptcy court by this defendant, as trustee of the bankrupt estate of Hume & Porter; (5) confesses judgment against the bankrupt estate in favor of plaintiff for the amount sued on, including costs and interest to January 14, 1913.

On these issues the case was tried to the court without a jury. At the conclusion of the evidence the court made special findings of fact and conclusions of law, as follows:

"On July 31, 1913, the same being a regular judicial day of the July term, 1913, of the county court of Custer county, State of Oklahoma, the above-entitled cause came on to be heard, the plaintiff being represented by their attorneys, McLaury & Hopps, the defendants G. W. An-

drus & Son and J. S. Huston, trustee in bankruptcy, being present in court and represented by their attorneys, respectively, Geo. T. Webster and Nicholas & Lyle, and Hume & Porter being represented by their attorneys,.Phillips & Mills, and after the calling of said cause for trial all parties announcing ready for trial and waived a jury herein. Whereupon the court proceeded to hear said. cause, and, after hearing all the evidence adduced at the trial and the argument of counsel and a careful examination of all the pleadings and exhibits in said cause, the court thereupon took the matter under advisement, together with permission to counsel to file briefs for the further consideration of the court. The plaintiff, Theodore Maxfield & Co., by their attorneys filed their briefs herein and G. W. Andrus & Son and John S. Huston, trustee in bankruptcy, also filed their written brief, and the court, after carefully considering said briefs and all of the facts and circumstances connected with said cause, now on this the 9th day of September, 1913, finds:

"That the plaintiff sold and delivered into the store of Hume & Porter, at Thomas, Okla., a certain bill of goods as described in plaintiff's petition, amounting to the sum of $416.21.

"The court further finds that at the time of the delivery of said goods the said Hume & Porter was the owner of a certain stock of goods in the town of Thomas, Okla.

"The court further finds that the said G. W. Andrus & Son were prospective purchasers of the stock of goods owned by the said Hume & Porter at the time plaintiff's goods were bought and delivered, and that at the time said bill of goods was so purchased, the said G. W. Andrus & Son were not engaged in the mercantile business, and more especially of the class and character of merchandise designated in the pleadings herein, except as merely prospective purchasers of the said stock.

"The court further finds that the defendants G. W. Andrus & Son were ready and willing to comply with their

contract and agreement with the said Hume & Porter, and that the said Hume & Porter could not comply with their said contract with G. W. Andrus & Son on account of the bulk sales law, and that the said contract for the sale of said stock of goods was never consummated, and the said defendants Hume & Porter made an assignment in bankruptcy of said stock of goods, including the goods in controversy.

"The court further finds that the said defendants G. W. Andrus & Son, at the time said bill of goods were sold had no interest in said stock of goods save that of a prospective purchaser, and that the plaintiff's salesman was on the ground during said transaction, and by the slightest diligence on his part could have ascertained all the particulars and facts as they existed at the time the order was so taken and the purchase made for said goods, and that it was his duty, as representative of said company, to ascertain said facts and report same to the company, as their representative.

"The court further finds from what seems to be a preponderance of the evidence that the plaintiff's salesman was advised on the premises while making said sale that the ownership of G. W. Andrus & Son to said stock of goods was only prospective, and the deal, whereby said goods were to be delivered, was not consummated, and the said salesman was directed to sell and deliver said goods in the name of Hume & Porter.

"The court further finds from the evidence that the defendants G. W. Andrus & Son have derived no benefit from any source, nor received any compensation from any source by reason of their connection as prospective purchaser of said stock of goods.

"The court further finds from the evidence that the defendants G. W. Andrus & Son have in their possession the sum of $651, the same being assets of said estate of Hume & Porter, insolvents.

"It is therefore considered, ordered, and adjudged by the court that the plaintiff, Theodore Maxfield & Co., a

corporation, have and recover judgment against the defendant J. S. Huston, trustee in bankruptcy for the said Hume & Porter, for the sum of $416.21, and that the plaintiff take nothing from the defendants G. W. Andrus & Son, and said defendants G. W. Andrus & Son be discharged and go without day, upon their delivering and paying over to the defendant J. S. Huston, trustee in bankruptcy, the sum of $651, in cash, to be accounted for by the said J. S. Huston, as assets for the benefit of the creditors of the said Hume & Porter; and that said plaintiff be adjudged to pay the costs herein; and that the plaintiff be allowed. its exceptions to this judgment and journal entry, and the clerk of this court is directed to note the exceptions on the records and minutes of the trial of this case of all parties herein concerned; and that said exceptions be as full and as operative for all intents and purposes of appeal as though the parties were present in court at the rendition of this judgment, and transmit a copy thereof to all parties concerned.

"Witness my hand and the seal of said court this the 9th day of September, A. D. 1913.

"J. C. McKNIGHT, *County Judge.*"

To which findings of fact and conclusions of law plaintiff reserved its exceptions.

The motion for new trial being overruled, the judgment became final, and appeal was lodged in this court. But two propositions are presented in the assignments of error for our consideration here: (1) The trial court erred in its findings of facts; (2) the court erred in its conclusions of law.

Upon the first assignment, that the "court erred in its findings of fact," will say we have examined the record, and have gone over the evidence, which we find is conflicting. The rule quoted by counsel for plaintiff in error is that:

"The evidence is sufficient to sustain a judgment, if there is any whatever reasonably tending to prove, either directly and immediately or by permissible inference, the essential facts." *(Great W. C. & C. Co. v. Serbantas, 50 Okla. 118, 150 Pac. 1042.)*

It appears to the writer hereof that counsel goes to the fullest extent of the rule. To our mind the safer and better rule is that:

"Where the evidence reasonably tends to support the findings of fact of the trial court, such findings will not be disturbed on appeal." *Light v. Canadian County Bank, 2 Okla. 543, 37 Pac. 1075,* approved by many other decisions of this court.

At least, that rule is sufficient in this case.

Counsel for plaintiff in error insists that there is absolutely no testimony tending to sustain the findings of the court on the question that the goods were sold to, and should have been shipped to, Hume & Porter. We do not agree with counsel in that contention. There is some testimony tending to support that theory and defense of defendants Andrus. While we do not care to go into an extended recital of the testimony of the witnesses, and do not think it necessary, we will simply call attention to that of defendants G. W. and C. B. Andrus, which is in part as follows: G. W. Andrus testified as follows:

"Q. Tell the court just who was present, what took place, and what was said between you, your son, and this man Smith, in the matter of the ordering of this bill of goods for $416.10. A. Mr. Smith came there and wanted to sell us this bill of goods. He came to my son and me, and I said to him: 'We are not buying the goods yet. This deal is not consummated'—and about that time Mr. Garner spoke up something about the goods being needed pretty bad in the store, and that it made no difference who

the store went to, he needed the stuff in his department,. and Mr. Smith didn't want to have to make another trip.. Q. Did that take place before his trunks were brought up? A. Yes, sir. Q. What time in the day? A. It was in the forenoon. Q. When did the samples arrive? A. Shortly after dinner. * * * Q. When he got those trunks opened. up, tell the court everything that took place with regard to the ordering of the goods. A. Well, we all looked the goods over and passed our opinion on what we thought would be the best goods to sell, and when we would decide on anything, Mr. Porter would say, So many dozen of this, and so many dozen of that, etc. Q. Did you notice that little order book, how it was headed? A. No, sir; I didn't see it. Q. Did he say anything about who he would charge it to? A. No, sir; not at that time. Q. When did he? A. After it was over, he (Smith) turned to my son and said, 'Who will it be billed to?' and my son said, 'To Hume & Porter.' Q. When he made that inquiry did he write anything? A. Yes, sir; he wrote something on that book. Q. From August 26th to October 30th, you were in there? A. Yes, sir. Q. What was done with the money? In whose name was it banked? A. In Hume & Porter's name. Q. Who drew the checks? A. Hume & Porter. Q. Who paid the incidentals? A. Hume & Porter."

C. B. Andrus gave the following testimony:

"Q. In whose name did he charge these goods, if you know? A. When he got them all filled out, he said, 'Who will I ship them to?' and I said, 'To him, Hume & Porter.' Q. Do you know what he wrote? A. Yes, sir. Q. Then do you know whether or not Smith knew at that time whose store that was? A. He did. Q. What, if anything, did he know as to there being a prospective deal on and your father and you buying the store? A. I told him that we was on a trade for it, but the trade had not been made."

This is sufficient to show that there was some evidence tending to support the findings of the trial court.

In *Bohart v. Mathews*, 29 Okla. 315, 116 Pac. 944, Mr. Justice Williams, speaking for the court, said:

"As to whether the evidence sustained the judgment, we are not prepared to say that there is no conflict in the evidence. It has, time and again, been held by this court that: 'Where a case is tried by the court without the intervention of a jury upon controverted questions of fact, and there is evidence reasonably tending to support its findings, such findings will not be disturbed on the weight of the evidence. (a) Where the testimony is partly oral and conflicting, and the finding of the court is general, such finding is a finding of every special thing necessary to be found to sustain the general finding, and is conclusive upon this court upon all doubtful and disputed questions of fact.' *McCann v. McCann*, 24 Okla. 264, 103 Pac. 694; *Alcorn v. Dennis*, 25 Okla. 135, 105 Pac. 1012; *Bretch Bros. v. Winston & Son*, 28 Okla. 625, 115 Pac. 795; *Robinson v. Roberts*, 20 Okla. 787, 95 Pac. 246."

Adopting the findings of fact by the trial court compels the approval of his conclusions of law. The judgment of the lower court should be affirmed in every particular.

By the Court: It is so ordered.