GIRARD FIRE & MARINE INSURANCE CO. v. SCOTT.

1. INSURANCE—CONSTRUCTION OF POLICY—INTENT.
   Insurance policies are to be construed as a whole and the intent of the parties gathered from within the instrument.

2. SAME—STANDARD FIRE INSURANCE POLICY—INCREASE OF HAZARD —PROXIMATE CAUSE—COUNTERFEITERS' PRINTING PRESS.
   Decree of liability for loss under Michigan standard fire insurance policy is affirmed where evidence sustains finding of court that dwelling house was used as such while policy was in force and that although counterfeiters' printing press was located in basement, it did not increase hazard, was not being used and did not contribute to the loss or amount of damage. WEADOCK, J., dissenting.

Appeal from Kent; Brown (William B.), J. Submitted October 3, 1933. (Docket No. 147, Calendar No. 37,470.) Decided December 5, 1933. Rehearing denied December 29, 1933.

Bill by Girard Fire & Marine Insurance Company, a Pennsylvania corporation, against Fred Scott to cancel a fire insurance policy. Cross-bill by defendant for money decree for fire loss. Decree for defendant on cross-bill. Plaintiff appeals. Affirmed.

*Smith, Searl & Strawhecker*, for plaintiff.

*Charles H. Lillie*, for defendant.

POTTER, J. Plaintiff filed a bill in equity, after loss by fire of defendant's house and contents, insured therein, to cancel its policy of insurance. De-

fendant, by way of cross-bill, sought to recover for the loss and damage insured against. From a decree for defendant plaintiff appeals. The policy, a Michigan standard form, was issued by plaintiff on defendant's dwelling house. Prior to the fire which destroyed it, defendant, while his family was away, engaged with others in the manufacture of counterfeit money therein, for which he was subsequently convicted in the United States district court for the western district of Michigan, and sentenced to prison. The policy provided:

"This entire policy shall be void if the insured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof."

The policy does not provide it shall be void if the hazard is increased, but that the insurer shall not be liable for loss or damage "*while* the hazard is increased by any means within the control or knowledge of the insured."

It further provides:

"No suit or action on this policy, for the recovery of any claim, shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, nor unless commenced within 12 months next after the liability shall have accrued: Provided, however, This company may not base a defense on any breach of the conditions of the policy to be performed by the insured prior to loss or damage, unless such breach exists at the time of the loss or damage, or contributed to the loss or damage, or to the amount thereof."

Insurance policies, like other contracts, are to be construed as a whole. The intent of the parties is

to be gathered from the four corners of the instrument. The policy in question does not provide: It shall be void in case the hazard is increased, but that the insurer shall not be liable for loss or damage while the hazard is increased by any means within the control or knowledge of the insured. It further provides that the insurer can defend only, *first,* if the breach exists at the time of the loss or damage; or *second,* contributed to the loss or damage or the amount thereof. Had the insured known the premises were being used for the purposes of counterfeiting, it would probably not have issued the policy in the first place and would have had a right to cancel the policy because of increased hazard (*Bonefant* v. *Insurance Co.,* 76 Mich. 653; *Spinner* v. *Concordia Mutual Fire Ins. Co.,* 264 Mich. 388; *Graley* v. *American Eagle Fire Ins. Co.,* 235 App. Div. 490 [257 N. Y. Supp. 566]); and if the house was being used for the manufacture of counterfeit money at the time of the fire, it is probable plaintiff would be entitled to relief.

A small foot-power printing press in the basement of the house had been used to print counterfeit money. The trial court found this printing press was not operated after July 25, 1932, the fire which destroyed the house and contents did not occur until August 14, 1932, the house was not being used for counterfeiting at the time of the fire, during all the time the policy was in force the house was used and occupied by defendant as a dwelling house, the hazard was not increased by the use of the printing press, there was no breach of the conditions of the policy existing at the time of the loss, the presence of the printing press in the house did not contribute to the loss or damage or the amount thereof; and entered a decree for defendant.

Under the facts as found by the trial court, which facts are sustained by the evidence, the decree is affirmed, with costs.

McDONALD, C. J., and SHARPE, NORTH, FEAD, WIEST and BUTZEL, JJ., concurred with POTTER, J.

WEADOCK, J. (*dissenting*). I dissent because the insured concealed a material fact concerning the subject of the insurance which rendered the policy void. It was insured as a dwelling and for such use and occupancy as the exigencies of the occupancy require. If the insured had informed the company that he had a printing press in the dwelling for printing counterfeit money it might not have issued the policy. It is immaterial that the press or its use in printing counterfeit money did not have any influence on the loss. *Macatawa Transportation Co.* v. *Fireman's Fund Ins. Co.*, 168 Mich. 365, 369 (Ann. Cas. 1913 C 69).

The decree should be reversed and a decree entered here for the plaintiff, with costs of both courts.