ALLEN PARK THEATRE COMPANY, INC v MICHIGAN MILLERS
MUTUAL INSURANCE COMPANY

### OPINION OF THE COURT

1. INSURANCE—FIRE INSURANCE POLICY—BUSINESS-INTERRUPTION BEN-
EFITS—PHYSICAL DAMAGE—BURDEN.

   The burden is on an insurer to say so unequivocally in its
   standard fire insurance policy which includes extended cover-
   age and business-interruption endorsements if the insurer
   wanted to be sure that the payment of business-interruption
   benefits had to be accompanied by physical damage.

### DISSENT BY FITZGERALD, P. J.

2. INSURANCE—FIRE INSURANCE POLICY—EXTENDED COVERAGE—DI-
RECT LOSS—WORDS AND PHRASES—CONDITION PRECEDENT.

   *The word "direct", as defined in an extended-coverage endorse-
   ment of a standard fire insurance policy, is not susceptible of
   ambiguous interpretation; "loss limited and conditioned in such
   policy, resulting from direct loss to property from the perils
   insured against" can mean only that direct loss to property
   must occur as a condition precedent for recovery under the
   policy, therefore, an actual damage to or destruction of the
   insured premises is required in order for the insured owners to
   be reimbursed for losses suffered.*

3. INSURANCE—FIRE INSURANCE POLICY—BUSINESS-INTERRUPTION
CLAUSE—CONTRACTS—CONSTRUCTION.

   *A business-interruption rider to a standard fire insurance policy
   is not a separate and independent agreement without reference
   to either the standard policy or the extended-coverage endorse-
   ment; it is fundamental that insurance policies must be con-
   strued as a whole, the intent of the parties being gathered from
   the four corners of the instrument.*

REFERENCES FOR POINTS IN HEADNOTES
[1, 3, 4] 44 Am Jur 2d, Insurance § 1694.
[2] 44 Am Jur 2d, Insurance § 1898.

4. Insurance—Insured Premises—Denial of Access—Order of Civil Authority—Business Loss—Reimbursement.

*A proper interpretation of a standard fire insurance policy, its extended-coverage endorsement and its business-interruption rider leads to a conclusion that the denial of access to insured premises by order of civil authority cannot be reimbursed as a business loss where no damage to or destruction of the insured property occurs because physical damage was required as a condition precedent to the right of recoupment of losses sustained due to an order by civil authority.*

Appeal from Oakland, Arthur E. Moore, J. Submitted Division 1 March 12, 1973, at Detroit. (Docket No. 14757.) Decided June 28, 1973.

Complaint by Allen Park Theatre Company, Inc., and others against Michigan Millers Mutual Insurance Company and Michigan Mutual Liability Company to recover for business losses under policies of business-interruption insurance issued by the defendants. Judgment for plaintiffs. Defendants appeal. Affirmed.

*David Newman* and *Gerald Curtis,* for plaintiffs.

*Denenberg, Tuffley & Thorpe,* for defendants Michigan Millers Mutual Insurance Company, as to the Americana Theatre only, and Michigan Mutual Liability Company.

Before: Fitzgerald, P. J., and V. J. Brennan and O'Hara,* JJ.

O'Hara, J. I agree that the insurance policy in this case can be read with complete logic to arrive at the result reached by Judge Fitzgerald. I am, however, compelled to say that the result reached in *Sloan v Phoenix of Hartford Ins Co,* 46 Mich

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

App 46; 207 NW2d 434 (1973), is just as logically possible. Under these circumstances I am compelled to hold with the *Sloan* Court. If the insurer wanted to be sure that the payment of business-interruption benefits had to be accompanied by physical damage it was its burden to say so unequivocally. Under the authority of *Sloan* the trial judge is affirmed.

V. J. BRENNAN, J., concurred.

FITZGERALD, P. J. *(dissenting)*. Defendant insurance companies are appealing as of right from a decision permitting plaintiff theatre owners to recover damages for business losses. Plaintiffs were forced to cease operation pursuant to an executive order closing all places of amusement within Wayne County due to the civil disturbance which occurred subsequent to the death of Martin Luther King, Jr. We are asked to examine and interpret the provisions of plaintiffs' insurance policy to determine whether the circuit court's decision awarding damages to plaintiffs should be permitted to stand.

There is no dispute regarding the facts of the case. Defendants issued their standard fire insurance policy to plaintiffs, including extended coverage and business-interruption endorsements. On April 5, 1968, and for some time prior thereto, the plaintiffs were engaged in business as the owners and operators of the theatres described in the original complaint. On that date, following the death of Martin Luther King, Jr., civil disturbance occurred in various areas of metropolitan Detroit, accompanied by vandalism to real and personal property, although there was no damage in, upon or adjacent to the theatres operated by the plaintiffs. Effective 4:30 p.m. on said date, the Governor

of the State of Michigan declared that a state of
public emergency existed in Wayne County. By
Executive Order No. 1968-1, effective Friday, April
5, 1968, at 7:30 p.m., all places of amusement
within Wayne County were closed until further
notice. The executive order stated, among other
things:

"2. No persons shall be allowed on the public streets
or thoroughfares in the County of Wayne between the
hours of 8:00 o'clock p.m. and 5:00 o'clock a.m., pro-
vided, however, that this regulation shall not apply to
persons going to and from their normal occupations and
to those whom permission has been specifically granted
by the Director of the State Police or his duly autho-
rized agent.

\* \* \*

"4. All places of amusement within the County of
Wayne are hereby closed until further notice.

\* \* \*

"7. All meetings or assemblies of more than three
persons is prohibited unless permission has been
granted by the Director of the State Police or his duly
authorized agent."

Executive Orders 1968-2 and 1968-3 containing
identical provisions were issued simultaneously
extending the area in which a state of public
emergency existed. These restrictions were relaxed
by amended executive orders dated April 10, 1968,
permitting places of amusement to open between
the hours of midnight and 5 a.m.

The theatres operated by the plaintiffs were
customarily open daily from 5:30 p.m. to midnight
in addition to weekend matinee performances.
During the period of April 5 through April 10,
1968, in compliance with the Governor's proclama-
tions and executive orders, the theatres were
closed for a six-day period.

The extended-coverage endorsement, attached to each of the policies involved, states:

"In consideration of the premium for this coverage and subject to the provisions herein and in the policy to which this endorsement is attached, including endorsements thereon, the policy is extended to insure against direct loss by * * * riot * * * .

*"Provisions Applicable Only To Riot, Riot Attending A Strike And Civil Commotion:* Loss by riot * * * shall include * * * direct loss from pillage and looting occurring during and at the immediate place of a riot * * * .

"Provisions Applicable Only When This Endorsement Is Attached To A Policy Covering Business Interruption, Tuition Fees, Extra Expense, Rent Or Rental Value, Leasehold Interest Or Other Consequential Loss: *The term 'direct', as applied to loss, means loss, as limited and conditioned in such policy, resulting from direct loss to described property from the peril(s) insured against;* and, while the business of the owner or tenant(s) of the described building(s) is interrupted by a strike at the described location, this Company shall not be liable for any loss due to interference by any person(s) with rebuilding, repairing or replacing the property damaged or destroyed or with the resumption or continuation of business." (Emphasis added.)

An additional rider, Business Interruption Form No. 3, provides as follows:

"1. [T]his policy covers only against loss resulting directly from necessary interruption of business *caused by damage to or destruction of real or personal property* by the peril(s) insured against, during the term of this policy, *on premises occupied by the Insured* * * * and situated [as herein described].

"2. In the event of such damage or destruction this Company shall be liable for the ACTUAL LOSS SUSTAINED by the Insured *resulting directly from such interruption of business* * * * for only such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair or replace such

part of the property herein described *as has been damaged or destroyed* * * * .

"7. Interruption By Civil Authority: This policy is extended to include the actual loss *as covered hereunder,* during the period of time, not exceeding 2 consecutive weeks, *when as a direct result of the peril(s) insured against,* access to the premises described is prohibited by order of civil authority." (Emphasis added.)

The Michigan Standard Fire Insurance Policy, lines 11 through 21, provides as follows:

"This Company shall not be liable for loss by fire or other perils insured against in this policy caused, directly or indirectly, by: * * * (h) order of any civil authority except acts of destruction at the time of and for the purpose of preventing the spread of fire, provided that such fire did not originate from any of the perils excluded by this policy." MCLA 500.2832; MSA 24.12832.

The central issue presented in construing the above-mentioned provisions is whether actual damage to or destruction of the insured premises as a direct result of riot is required under the interruption by civil authority clause in order for owners to be reimbursed for losses suffered. Plaintiffs contend the risk insured against is the prohibition of access to insured premises by order of civil authority enacted by reason of the stated perils without any requirement that denial of access be caused by reason of physical damage to the insured's property. Defendants argue that condition precedent to reimbursement under the business-interruption clause is the requirement that there be direct and actual physical damage to or destruction of the property.

Defendants state that the perils insured against appear only on the extended-coverage endorse-

ment. Their obligation to reimburse the insured
for losses suffered due to business interruptions by
civil authority pursuant to paragraph 7 of the
policy must necessarily reference paragraphs 1
and 2. They argue that paragraph 7 merely deter-
mines the *extent* of the coverage permitted under
the first two paragraphs. Since paragraph 1 ex-
pressly restricts coverage to losses resulting di-
rectly from necessary interruption of business
caused by damage to or destruction of real or
personal property, the absence of damage to or
destruction of the premises obviates the require-
ment that defendant reimburse plaintiffs for busi-
ness losses. They read paragraphs 1, 2 and 7 to
mean the following: Paragraph 1 is the *basic in-
suring provision* which specifically requires that
the loss suffered result directly from necessary
interruption of business caused by damage to or
destruction of real or personal property by the
perils insured against. Paragraph 2 imposes a
limitation on the actual loss directly suffered by
restricting the *time* during which repairs or re-
placement of damaged property can occur. They
require the exercise of due diligence and dispatch.
Paragraph 7 *extends the time* during which repair
or replacement can be made by granting an addi-
tional period of two weeks in the event of interrup-
tion by civil authority.

Plaintiffs understand the policy to read differ-
ently. Their interpretation is that the business-
interruption form constitutes a separate and inde-
pendent agreement providing coverage additional
to the perils provided in the extended-coverage
endorsement. They further assert that interrup-
tion by civil authority is an additional peril for
which coverage is provided. A distinction is drawn
between the physical damage provisions of para-

graphs 1 and 2 and paragraph 7, which addresses
a wholly different hazard for peril, that being the
captioned heading, Interruption by Civil Author-
ity. The absence of any language requiring physi-
cal destruction or damage under paragraph 7
should result in reimbursement for damages incur-
red due to denial of access to the premises. The
two-week extension period granted in paragraph 7
is regarded as being both inconsistent and redun-
dant if the requirement of physical damage or
destruction is implied since there exists no rela-
tionship between that period and the actual time
needed to repair or replace the damage. Plaintiffs
finally argue that the phraseology of paragraph 7
is ambiguous, and, since it is susceptible to differ-
ent interpretation, must be resolved against the
insurer.

I am unable to agree with the plaintiffs' inter-
pretation of the insurance agreement and would
reverse the decision of the circuit court. Address-
ing first the matter of interpreting the insurance
agreement on its face, it appears it was not within
the contemplation of the contract to provide busi-
ness-interruption-insurance coverage to policy
holders without damage to or destruction of the
premises. The extended-coverage endorsement of
the standard policy delineated perils which could
result in *direct* loss to the insured. Direct loss was
defined in the endorsement as a "loss limited and
conditioned in such policy, resulting from *direct
loss to described property* from the peril(s) insured
against". It is agreed that riot was one of the
perils insured against.

Also incorporated into the standard policy was
an endorsement entitled "Business Interruption
Form No. 3". Because the extended-coverage en-
dorsement is applicable *only* when attached to a

policy covering certain other risks (among which includes business interruption), the terms of Form No. 3 must be read in relation to the extended-coverage endorsement. Paragraph 1 covers loss resulting *directly* from necessary interruption of business *caused by damage to or destruction of real or personal property* from the perils insured against. Under paragraph 2, if property damage or destruction from the perils results, coverage is limited to actual loss sustained by the insured resulting *directly* for only such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair or replace the damaged or destroyed property.

It is at this point that the writer departs from the lower court's reasoning. The trial judge construed paragraph 7 as not requiring physical damage to or destruction of property. This provision states:

"7. Interruption By Civil Authority: This policy is extended to include the actual loss *as covered hereunder,* during the period of time, not exceeding 2 consecutive weeks, *when as a direct result of the peril(s) insured against,* access to the premises described is prohibited by order of civil authority." (Emphasis added.)

The court ruled that the requirement of physical damage to or destruction of the insured property was too technical a theory upon which to fulfill the purposes of the parties. Further, it was thought incongruous to deny recovery for business losses where adjacent property was destroyed, yet reimburse the owners of premises who suffered minor dollar damage to property.

I cannot agree with this analysis. The word "direct", as defined earlier, is not susceptible to

ambiguous interpretation. "Loss limited and conditioned in such policy, resulting from direct loss to property from the perils insured against" can mean only that direct loss to property *must* occur as a condition precedent for recovery under the policy.

The apparent unreasonable purpose in denying recovery where adjacent property is hypothetically destroyed yet awarding insurance benefits for minor dollar damage to the insured property escapes me. The fact of the matter is that denial of access to premises without property damage was not one of the risks insured against. What is termed coverage for minor dollar damage (repairable within two weeks) reads as the grant of an extension of time during which those persons designated by the owners are able to make the necessary repairs to insure continuity of operation. This insurance coverage is in no way related to damages, however severe, that may occur to the premises of adjacent property owners.

The writer cannot agree with plaintiffs' contention that the business-interruption rider is a separate and independent agreement without reference to either the standard policy or the extended-coverage endorsement. It is fundamental that insurance policies must be construed as a whole, the intent of the parties being gathered from the four corners of the instrument. *Girard Fire & Marine Ins Co v Scott,* 265 Mich 293; 251 NW 314 (1933). The word "direct" in the extended-coverage endorsement is clearly defined and relates to those losses appearing in the business-interruption rider. The two documents must be read together.

Conceding plaintiffs' interpretation of the business-interruption rider that interruption by civil authority represents a separate peril other than

those appearing in the extended-coverage endorsement, one cannot ignore the requirement of damage to or destruction of the insured premises. The words "as covered hereunder" in paragraph 7 refer back to paragraphs 1 and 2 wherein physical damage is a prerequisite for recovery.

The precise question presented in this case has been decided in two recent Michigan Court of Appeals cases.[1] However, I am unable to conclude, as these decisions do, that denial of access to insured premises by order of civil authority can be reimbursed as a business loss where no damage to or destruction of the insured property occurs. *Two Caesars Corp v Jefferson Ins Co of N Y,* 280 A2d 305 (DC App, 1971), decided by the District of Columbia Court of Appeals, advances a more compelling argument for denying recovery under circumstances virtually identical to the instant case. A restaurant owner was denied insurance coverage for loss of income from the sale of food and alcoholic beverages resulting from a curfew imposed because of civil disturbances following the assassination of Martin Luther King, Jr. *Two Caesars* ruled specifically on the absence of language in paragraph 7 requiring physical damage to the premises in stating at 306–307:

"Appellant contends, however, and with particular reference to the 'Business Interruption' endorsement attached to the policies involved in the case now on appeal that *Bros, Inc [v Liberty Mutual Fire Ins Co,* 268 A2d 611 (DC App, 1970)] is distinguishable because there the policy language provided coverage 'when, as a direct result of damage to or destruction of property adjacent to the premises herein described,' access to such property is specifically prohibited by order of civil

---

[1] *Sloan v Phoenix of Hartford Ins Co,* 46 Mich App 46; 207 NW2d 434 (1973); *Southlanes Bowl, Inc v The Lumbermen's Mutual Ins Co,* 46 Mich App 758; 208 NW2d 569 (1973).

authority. In this connection, appellant says that the language quoted above formed the basis for our ruling in *Bros, Inc, supra,* and appellant seems to suggest that we attach significance to the fact that no such language is employed in the policies now under consideration.

"We are unable to follow appellant's reasoning. There was no allegation in *Bros, Inc, supra,* that the 'Order of Civil Authority' was predicated upon damage to or destruction of either the premises insured or property adjacent thereto. Consequently, no such consideration could have influenced the court in its decision. What we said in that case, at 613–614, was:

" 'Appellant does not allege that the loss from interruption of his business resulted in damage to or destruction of his property. Coverage is therefore not present under the first two of the quoted provisions. As to the final clause, though the loss alleged resulted from the curfew and municipal regulations, these did not prohibit access to the premises because of damage to or destruction of adjacent property.' "

The *Two Caesars* Court was well aware of the difference in contractual language in the policies, yet maintained its position that physical damage was required as a condition precedent to the right of recoupment of losses sustained due to an order by civil authority.

Plaintiffs next argue that the ambiguity that exists in paragraph 7 of the Business Interruption Rider must be interpreted in favor of the insured. The previous discussion has attached meaning to the provisions involved, and the reasoning need not be reiterated. In support of this interpretation, the case of *Cleland Simpson v Firemen's Ins Co of Newark, N J,* 392 Pa 67; 140 A2d 41 (1958), stands directly on point. The Pennsylvania Supreme Court ruled in favor of an insurance company where business-interruption clauses of an insurance policy were quite similar to those involved in the instant case:

"Thus we see the buildup of the contract. First, the specification of the perils insured against and confining the coverage to direct losses from such perils. Secondly, the change by form no. 3 of the coverage provision * * * (otherwise defined as gross profit) for the direct loss from fire or lightning, but limiting the loss to that caused by *destruction* or *damage* by the perils (fire and lightning) insured against. Thirdly, extending this coverage to include a time-limited loss due to prohibition of access to the premises by order of civil authority, but again as a *direct result* of a peril insured against.

"We can only conclude that the clear language of the policy restricts the loss to that following a direct invasion of the property by fire or another specified peril and the subsequent prohibition by civil authority of access to the properties." 392 Pa 69, adopting by reference 11 Pa D&C 2d 607, 611–612; 140 A2d 43–44.

I am unable to agree with defendants' contention that access to the insured premises was not prohibited as a direct result of the riot since the premises were not located in those areas damaged or destroyed. Access to the premises was prohibited by order of civil authorities as a direct result of riot or civil commotion. Since the contract was silent as to the question of proper exercise of executive discretion, any ambiguity present in this question should be resolved in favor of the insured. *Martin v Ohio Casualty Ins Co,* 9 Mich App 598; 157 NW2d 827 (1968). However, activation of paragraph 7 of the Business Interruption Rider is still dependent upon physical damage to or destruction of the insured premises. The absence of physical damage to the premises in this case renders paragraph 7 inapplicable.

Finally, analysis of the above issue renders moot any discussion of whether defendant insurers are barred by waiver from asserting the failure of plaintiffs to comply with the policy provisions regarding the timely filing of written proofs of

loss. Suffice it to say that the Michigan cases are clear in distinguishing between a general agent or adjuster with authority to adjust losses and those agents who lack such express or implied authority. Plaintiffs have ignored authorities cited by defendants and do not persuade this Court that the telephone conversation between plaintiffs and defendants' agent could effectively serve as a waiver of the requirement for filing a proof of loss in the absence of proof that the agent possessed the requisite authority.

I would reverse the decision of the trial court.